HOUSTON AND TEXAS CENTRAL RAILWAY CO. *v.* C. J. DUNHAM.

NEGLIGENCE.—The duty to use ordinary care in supplying a proper
road-bed and track of a railroad, and in keeping that road-bed and
track in repair, is incumbent on a railroad corporation.    It cannot
escape the consequences of the negligence of the agents whom it
has charged with a duty of that nature ; and this whether the injury
complained of as resulting from a defective road-bed is inflicted on
a fellow-servant of the corporation or another.

ERROR from Harris.    Tried below before the Hon. James
Masterson.

The defendant in error was brakeman on one of the passenger trains of tho plaintiff in error, and while in the discharge of his duty was injured, by being thrown from the track with the sleeper. The evidence showed that his right hip joint was dislocated, his pelois bone on the same side broken, and other and serious injuries inflicted, quite unintelligible to the ordinary legal reader, from the formidable terms employed by the physician in describing them. He was injured for life; can never be entirely cured.

He sued for damages on account of his injuries thereby sustained, and in his original petition alleged they were caused by the negligence of defendant's servants, as well as by the defective condition of its track.

Plaintiff in error excepted specially to so much of said petition as complained of the negligence of the defendant in error's fellow-servants, because it was not averred that they were unskillful, incompetent, or unfit for the service in which they were employed. The exception was sustained, and so much of the petition as set up the negligence of co-employés was stricken out.

Plaintiff below then amended his petition, by averring that his injuries were caused by the defective condition of the track, as set forth in his original petition; and that defendant below knowingly permitted it to be and remain in such defective condition for a long time prior to the injuries.

In his original petition, it was alleged that the defendant below, knowing the track to be in an unsafe condition, permitted it to remain filled with rotten ties.

Defense, general denial.

Verdict and judgment for plaintiff below for $7,000; motion for new trial; motion overruled, and notice of appeal. The facts of the case are stated, as far as necessary to its understanding, in the opinion.

*Baker & Botts*, for plaintiff in error.

I. As between master and servant, for injuries sustained by

the latter through the negligence of a fellow-servant engaged in the same business, the master is not liable, unless there be negligence in the appointment of such negligent servant, or in retaining him after notice of his incompetency. (Whart. on Neg., sec. 224; Warner *v.* Erie R. R. Co., 39 N. Y., 468; Wright *v.* N. Y. Central, 25 N. Y., 562; Laning *v.* N. Y. Central, 49 N. Y., 528; and cases cited in Whart. on Neg., sec. 224, note 1; Cooley on Liability of Master to Servant, April No. (1876) of Southern Law Review, 119–121; Sher. & Red. on Neg., secs. 87, 89; 40 Mo., 167; 47 Id., 567.)

II. The plaintiff below, as brakeman on a train, and the road-master and section men whose duty it was to keep the track in repair for the safe running of the train, were fellow-servants. (Robinson *v.* Houston and Texas Central R. R. Co., 46 Tex., 549. And in addition to the authorities there cited, we refer to the following: Wright *v.* N. Y. Central, 25 N. Y., 565; Boldt *v.* N. Y. Central, 18 N. Y., 432; Russell *v.* Hudson River R. R. Co., 17 N. Y., 134; Gilman *v.* Eastern R. R. Co., 10 Allen, 233; Wonder *v.* Baltimore and Ohio R. R., 32 Md., 411; Sher. & Red. on Neg., sec. 100.)

The charge refused was to the effect that defendant is not liable, if the jury believe from the evidence that it used ordinary care in selecting proper servants to do the particular work complained of. The jury was not told by the court if they so believed to find for the defendant; nor did the court tell the jury that the diligence required of the defendant consisted in the selection of competent men, and in such number as the demands of the work required.

III. As the proof showed that defendant kept its road in repair by means of section men and a road-master charged with that duty, proof that, in the opinion of witnesses, the accident complained of was caused by rotten ties in the track was not sufficient to entitle plaintiff to recover, if true. It devolved on him to go further, and prove that defendant had been negligent in selecting competent men, or a sufficient number of them for the work; or that the railroad company,

or its proper officer charged with the duty of seeing that the track was kept in good repair, had notice of its defective condition, and with such notice failed to repair it, as alleged in the petition.

*Likens & Stewart,* for defendant in error.

I. The charge refused by the court is not applicable to the issues formed by the pleading. (Love *v.* Wyatt, 19 Tex., 312; Sayles' Prac., sec. 600.)

II. The law stated in the rejected charge was fully and clearly given to the jury by the court in the first part of its second general charge. (Keeble *v.* Black, 4 Tex., 69.)

III. The rejected charge does not contain a correct statement of the law.

The charge refused by the court, which is here assigned as error, substantially, is to the effect, that if the railway company exercised ordinary diligence in the selection of competent employés, and sufficient in number to keep its road in good repair, and furnished material therefor sufficient in quantity and quality, and that plaintiff was injured by defective track, he could not recover, unless it appeared from the evidence that the defect in the track was known to those whose duty it was to examine the road and report it, or might have been known by the use of ordinary care, and that they failed to repair it after obtaining such knowledge; that the proof of rotten ties being the cause of accident, alone was not sufficient; that he must prove negligence on the part of the company, in not employing a sufficient number of track hands to keep the road in order, or that the company, or its proper officers charged with the duty of seeing that the track was in good order, had notice of such rotten ties, and had neglected to remedy the evil. (1 Red. on Law of Railways, 4th ed., sec. 2, p. 518; Whart. on Neg., 206–224; Snow *v.* Housatonic R. R., 8 Allen, (Mass.,) 441; Ford *v.* Fitchburg R. R., 110 Mass., 260; Nashville R. R. *v.* Elliot, 1 Cold., (Tenn.,) 611; Gilman *v.* Eastern R. R., 10 Allen, (Mass.,)

233, and 13 Allen, (Mass.,) 433; Greenleaf *v.* Ill. Central R. R., 29 Iowa, 36–49; Greenleaf *v.* D. & S. R. R., 33 Iowa, 52; Flike *v.* Boston and Albany R. R., 53 N. Y., 549; Faulkner *v.* Erie R. R., 49 Barb., (N. Y.,) 327.)

IV. The law upon the subject treated of in the rejected charge was correctly stated by the court in its general charge to the jury. (Keeble *v.* Black, 4 Tex., 69; Texas and Pacific R. R. *v.* Murphy, 46 Tex., 356; Snow *v.* Housatonic R. R., 8 Allen, 441; Ford *v.* Fitchburg R. R., 110 Mass., 260; Nashville R. R. *v.* Elliot, 1 Cold., (Tenn.,) 611, and authorities before cited under our first proposition to this assignment.)

GOULD, ASSOCIATE JUSTICE.—This was a suit by a brakeman to recover damages for injuries received by the sleeping-car being thrown from the track, the alleged cause of the accident being the negligence of the railroad company in knowingly permitting its road-bed to remain out of repair and filled with rotten ties. In the original petition, there were also allegations of the negligence of the fellow-servants of plaintiff, but this part of the petition was excepted to, and the exception sustained. The cause was tried on an amended petition, charging that the accident was caused by the defective condition of the track and road-bed. There was evidence by several witnesses as to rotten ties, broken in pieces, found, after the accident, where the car first left the track, and which in their opinion caused the accident. They testify that two or three ties were completely rotten, and that it was plain to be seen by any one. On the other hand, the conductor and engineer say they had seen nothing wrong in the condition of that part of the road, and they do not know what caused the accident. The road-master testified that it was his duty "to see that the track was kept in good repair, and to furnish supplies for that purpose"; that this section was six miles long; on it were eight section hands, including the section boss, who, as a general thing, passed over this section once or twice a day, to examine the road and see that

it was in good condition; that at the place where the accident occurred, a few new ties had been put in the day before; when too much decayed, ties are taken out and new ones put in; this was then being done along the whole line of the road; considered that section safe and good; could not tell the cause of the accident; saw, after the accident, six or eight broken ties, as he supposed, by the trucks, but none that could be called rotten; as long as there are enough sound ties under a rail to hold it in its place, one or two rotten ones would not jeopardize the safety of a train; thinks the broken ties were sound enough to hold the rail in line in ordinary use.

The purport of the charge was, that if the accident was, without plaintiff's fault, caused by rotten ties, which could have been discovered by defendant by ordinary care, but were permitted to remain after the defendant knew, or ought to have known, thereof, to find for plaintiff; but if the rotten ties could not have been discovered by ordinary care, to find for defendant.

There were a verdict and judgment for plaintiff; and the errors urged in appellant's brief consist in the refusal of charges asked.

The first instruction refused was as follows: "The railroad company is not liable to one fellow-servant for the negligence or carelessness of another fellow-servant engaged in a common work, by which injuries happen, when the company has used ordinary care in the selection of proper servants to do the particular work for which they were employed."

In the earlier part of the charge, the court had given this instruction in substance, but not in such a connection as to apply to the issue on which the cause was tried, viz., whether the accident resulted from a defective road-bed, which was so defective through the negligence of the railroad company. On behalf of the company, it is claimed, that if they furnished a road-bed originally without fault, and sufficient for all its purposes, and thereafter used ordinary care in selecting proper

servants to keep it in repair, a defect in the road-bed growing out of the negligence of such servants is not chargeable to the company, but that injuries received by an employé under such circumstances are injuries caused by the negligence of a fellow-servant.

Of the authorities cited by plaintiff in error, Warner *v.* Erie R. R., 39 N. Y., 468, and Hard (administrator) *v.* Vermont and Canada R. R., 32 Vt., 473, seem mainly relied on to support this proposition. The former was a case where a baggage-master was injured by the fall of a bridge originally properly constructed, but which had been defective from decay,—a decay, however, not outward or visible. The proof was that competent employés examined the bridge by the usual tests regularly; that it was so examined the day before it fell, and that there was no visible decay. The court say that there was "an absolute want of any actual notice to defendant, or any of its employés, of any defect, real or suspected, in the bridge." There being no want of ordinary care, either in the company or its servants, it is evident that the case did not require the distinction taken between a failure to furnish a good bridge originally, and a failure to keep it so. The more recent cases from that State announce a doctrine not consistent with this distinction. (Laning *v.* N. Y. Central R. R., 49 N. Y., 521; Flike *v.* Boston and Albany R. R., 53 N. Y., 549.) The former was a case of injury to an employé from the fall of a scaffold constructed by the direction of a co-employé, who, after he was employed, acquired habits of drinking, and it was claimed that as the company had employed competent general agents, charged with the duty of selecting proper employés, its duty was performed, and the negligence of any of these agents or employés was the negligence of a fellow-servant. Speaking of the master's duty to have placed for the "servant's use proper and adequate physical means, and for his helpmates fit and competent fellow-servants," the court says: "That some general agent, clothed with the power and charged with the duty to make performance for

the master, has not done his duty at all, or has not done it well; neither shows a performance by the master, nor excuses the master's non-performance.   It is for the master to do by himself, or by some other.   When it is done, then, and not until then, his duty is met or his contract kept.   The servant then takes the risk of the "negligence, recklessness, or misconduct of his fellow in the use of the material and implements furnished, and of the failure from latent defects not revealed by practical tests, and from deterioration by the usual wear and tear.   It is not enough, to satisfy the affirmative duty of the contract, that he selects one or more general agents of approved skill and fitness."   The court held, "That a master is liable to his servant for an injury caused by the incompetence or want of skill of a fellow-servant, whether it existed when the fellow-servant was hired, or has come upon him after the hiring; the fellow-servant having been in the first instance hired, or afterwards continued in service, with notice or knowledge, or means of knowledge, of this lack."

The case in 32 Vermont, places the distinction on the ground that the business of procuring machinery necessary to equip a road, is a business different in its character from that of operating a road after it is equipped; but that all engaged in operating the road were fellow-servants, and "the ordinary consequences of the neglect of either upon the other must have been fully understood when they entered into the service of defendant."   But the agent to procure the original equipment, and the agent to keep the road properly equipped, are each working for the same common end with the brakeman who assists in operating the road; and if the latter cannot reasonably be held to have contemplated, in entering the service of the company, the possible negligence of the original agent, it is difficult to see much difference in the case of the agent to keep in repair.

Without deeming it necessary to comment further on the authorities cited by appellant, we think that the current of American authority is that the duty to use ordinary care in

supplying a proper road-bed and track, and in keeping that road-bed and track in repair, is in each case the personal duty of the master or corporation, and that the corporation cannot escape the consequences of the negligence of the agents whom it has charged with a duty of that nature.

The Supreme Court of Massachusetts, whose decision in Farwell *v.* Railroad Co., 4 Metcalf, is the leading authority in America in support of the non-liability of the railroad for the negligence of a fellow-servant, recognizes this as a legitimate exception to that rule, and such, we repeat, seems to be the current of authority in America, and we think the proper rule. (Ford *v.* Fitchburg R. R., 110 Mass., 260 ; Snow *v.* Housatonic R. R., 8 Allen, 441; Gilman *v.* Erie R. R., 10 Allen, 233 ; Id., 13 Allen, 433; Nashville R. R. *v.* Elliot, 1 Cold., (Tenn.,) 611; Frazier *v.* Penn. R. R., 38 Penn., 104; Walker *v.* Bolling, 22 Ala., 294; Noyes *v.* Smith, 28 Vt., 59. See, also, other authorities cited by counsel for defendant in error in brief.)

The charge asked as to non-liability for the negligence of a fellow-servant was not applicable to the case.

The other charges asked and refused were as follows: "The rotten ties, if you believe that rotten ties were the cause of the car being thrown from the track, is not sufficient to make defendant liable. To entitle the plaintiff to recover, he must prove more. In addition to the fact of rotten ties, he must prove that there was negligence on the part of the company in not employing a sufficient number of track hands to keep the road in order, or that the company, or its proper officer charged with the duty of seeing that the track was in good order, had notice of the defective condition of the road-bed and the track, and, having such notice, neglected to remedy the evil." And, again, on the same subject: "If you believe, from the testimony, that the railroad company exercised such ordinary care and diligence as I have defined, in the selection of competent employés, and sufficient in number to keep the road in good repair, and furnished material

therefor sufficient in quality and quantity for that purpose, and that plaintiff was injured by a defect in defendant's track, you will find for the defendant, unless you believe, from the evidence, that the defect which caused the disaster was known to those whose duty it was to examine the road and repair it, or might have been known by the use of ordinary care, and they failed to repair it after such knowledge."

A careful comparison of these charges asked and the charge given, will develop the fact that they are in substance the same. We think that they embodied what is the true rule: that the company was liable, if its employés charged with the duty of keeping the track in repair were guilty of negligence in the performance of that duty.

It has not been urged in argument that the judgment should be reversed on the ground that the verdict was against the evidence, or unsupported by the evidence. There was certainly evidence under which the jury might have concluded that there were rotten ties, which the road-master and section hands should have discovered and replaced, but which they negligently permitted to remain; and that the disaster was caused by these rotten ties, without any fault on the part of plaintiff.

The judgment is affirmed.

AFFIRMED.