# THE

# TEXAS LAW REPORTER.

## AUSTIN, TEXAS, NOVEMBER, 1882.

### M. P. RAILWAY CO. v. J. T. LYDE.

#### SUPREME COURT, TYLER TERM, 1882.

*Railroad—Master and servant—Protection of servant—Erroneous charge.*— A charge is erroneous which instructs the jury that "defendant is bound to protect his servant from injury by reason of latent or unseen defects, so far as human care and foresight can accomplish the result," for the reason that this measure of duty is greater and more stringent than that required by law.

*Same—Test of diligence.*—The test of diligence required of railroad companies in furnishing and maintaining proper cars, etc., is that of ordinary care.

*Pleading—Pecuniary condition.*—The wealth or poverty of a plaintiff in a suit for damages for injuries received is an immaterial issue, calculated to unduly influence the verdict, and such part of the pleading is subject to specia exception.

Opinion by Bonner, J.—The first error assigned is, that "The court erred in its charge to the jury in this: the jury was told in the charge that the defendant is bound to protect his servant from injury by reason of latent or unseen defects, so far as human care and foresight can accomplish the result, and erred in refusing the first charge requested by defendant, for reason that this measure of duty is greater and more stringent, as between master and servant than that prescribed by law, and that requested in said first, viz., ordinary care."

That portion of the charge objected to, reads as follows: "A master is bound to the exercise of reasonable care in reference to all appliances of the business, and is bound to protect his servant from injury therefrom, by reason of latent and unseen defects, so far as human care and foresight can accomplish the result; but he does not stand in the relation of insurer to the servant against injury, and can only be held chargeable when negligence can properly be imputed to him."

This will be considered in connection with the seventh assigned

error, that "The verdict of the jury was contrary to and against the evidence, in this:  The evidence established that the defect complained of was not known to the defendant, nor to its managers, nor even to any of its servants.  The proper careful precautions and regulations were existing and used to discover defects (and repair them) by frequent inspection and examinations by competent servants; that the machinery complained of was the usual and proper kind, and properly constructed and apparently sound; that if any defect existed, it was not known before the very moment of the injury, and therefore there was no evidence to show that the defendant or its managers knew, or ought to have known, of the alleged defect, and that there was negligence in not repairing, or not knowing, the same."

The testimony of the plaintiff himself shows that he had been acting in the capacity of brakeman on that particular train for ten days; that he looked at the deadwoods and drawheads before attempting to make the coupling, and that there was no apparent defect.  It was further in testimony that upon a careful examination a few minutes after the accident, it was found that the coupling had been made by the plaintiff; that the link and pin were perfect, and the drawheads in good order, and that nothing was found out of place, broken or defective; also, that there were then inspectors of cars at Mineola, Palestine, Houston, Round Rock, and at western terminus; that it was their duty to inspect every car coming in and going out of these stations, and report the defects, etc.  The cars which hurt Lyde were not reported out of order before or after the accident.  The drawheads do not recede more than one and one-half inches, whether the spring is in good or bad order, as that is all the space between the coils.  The precautions used for discovering defects are regarded as ample, and the men employed responsible.  There was testimony tending to prove that the accident did not, in fact, happen by reason of any defect in the drawheads, etc., as alleged, but by reason of contributory negligence on the part of the plaintiff in making the coupling from the inside instead of the outside of the curve of the switch upon which the cars had been placed, by which he was thrown between the projecting ends of the two cars, which came nearer together on the inside than on the outside of the curve.

The test of diligence applied by the court below in that part of the charge complained of, viz., that the company should protect its

servants from injury by reason of latent or unseen defects "so far as human care and foresight can accomplish the results," is greater than the law requires in such cases.

The general doctrine on this subject is thus succinctly stated by Mr. Pierce: "The company, like any master, is under obligations to its servants to use reasonable care to provide and maintain a safe road-bed and suitable machinery, engines, cars, and other appointments of the railroad, and is liable to them for injuries resulting from defects which it knew, or ought to have known, and could have prevented by the exercise of such care; and it is under the same duty and liability to maintain these instrumentalities in proper condition. The servant assumes the natural risks of his employment, but not those which the wrongful act of the employer has superadded. But if the company exercise reasonable or ordinary care in making and continuing such provision for the safety of employees, it is not liable to them for injuries resulting from defects in the road or machinery. It does not warrant the completeness of either, and is not responsible for latent defects, except so far as they are discoverable on proper inspection." (Pierce on Railroads, 370, citing numerous authorities in the notes.)

The test of diligence adopted by this court, requires of railroad companies in furnishing and maintaining proper cars, etc., is that of ordinary care. (Railroad Company v. Oram, 49 Texas, 341.) This error in the charge was sought to be cured by the special charge asked, in which ordinary care was made the test. This charge was given with the qualification that ordinary care, as therein stated, was that degree of care more fully defined in the general charge.

In other portions of the general charge, and in regard to certain duties of the company, ordinary care is made the test of liability on the part of the company, but it does not appear whether the qualifications made in the special charge referred to that, or to the more stringent test laid down in that portion of the charge above quoted, and which related more particularly to the duty of the company in providing suitable machinery and appliances. If it intended to refer to the latter, it was error; if to the former, it was not done so plainly but that the jury might have mistaken the application.

In our opinion, the first and seventh assigned errors were well taken, and require the reversal of judgment.

The third assigned error is, "That the court erred in the charge

to the jury in this: The main charge gave one measure of damages, and an erroneous one, and afterwards, at defendant's instance, gave another, and a more limited measure; and both were given to the jury without any note in writing showing by which the jury were to be governed."

This error related to that clause in the general charge in which the jury were authorized to allow, in estimating the damages, the expense of medical attention, and which clause was omitted in the special charge asked and given.

There was no evidence by which the jury could, with any certainty, estimate this as an item of damages, and they should not have been instructed so to do. This was probably an oversight in the learned judge below, and it does not appear that his attention was called to it, otherwise than in a negative way, by the mere omission of the clause in the special charge asked and given.

The fifth assigned error relates to the judgment of the court overruling the defendant's exception to that portion of the plaintiff's pleadings in which it was alleged that he was a " poor man, and without means with which to engage in commerce."

Whatever may be the rule in cases of slander and breaches of promise of marriage, yet this character of case, where the suit is by the party himself for injuries received, although the plaintiff may show the nature of his business and the value of his services in conducting it, as a ground for estimating damages, yet his wealth or poverty is an immaterial issue, calculated to influence the verdict, in regard to which evidence was not admissible, and the special exceptions should have been sustained.

It has been well said: " If the wealth of the plaintiff may be shown to increase damages, the correlative of the proposition should also be accepted, and the defendant be allowed to mitigate his damages by showing his poverty." (Field on Damages, sec. 120, citing authorities in notes; Hunt v. Railroad Co., 26 Ia., 363; Guengerich v. Smith, 34 Ib., 348; K. P. R. W. Co. v. Pointer, 10 Kansas, reported in 12 American Law Register, 64.)

There are other alleged errors, but as the case will be remanded, it will not be deemed necessary to refer to them.

Reversed and remanded.