## I. & G. N. AND M. P. RY. v. MARTHA KINDRED.

SUPREME COURT, TYLER TERM, 1882.

*Death from railway accident—Action by mother for death of son—Charge.*—It is not error to refuse a charge to the effect that if the son was instantly killed, no action accrued to him which could survive to the mother.

*Same—Evidence.*—Evidence of the poverty or helplessness of the mother was properly admitted to show the extent of her reasonable expectation of pecuniary aid from her deceased son, but such testimony would not be admitted for the purpose of measuring the damages.

*Same—Deposition—Idem Sonans*—The commission authorized the taking of the deposition of John McKay, and interrogatories were propounded to John McKay. *Held:* That where no question is made as to the identity of the person whose deposition was intended to be taken under the name of John McKay, and it not appearing that the name of the witness, which is signed John Mache, is not *idem sonans,* it was not error to overrule the motion to suppress the deposition.

*Defective Appliances—Diligence*—Even if it was the duty of the conductor to inspect the cars constituting his train, it was largely a question of fact whether the short time he had been in charge of the train (thirty-six hours) was sufficient, by ordinary diligence, to have enabled him to know of the defect through which he lost his life.

Appeal from Anderson county.—Opinion by Stayton, J.—This action was brought by Martha Kindred against I. & G. N. R. R. Co. and its lessee, the Missouri Pacific Railroad Company, to recover damages alleged to have resulted to her by the killing of her son, John Kindred, which, she alleged, occurred to her through the negligence of appellants, in that they did not keep the train in good repair upon which her son was employed as conductor. The special defect in a car, from which her injury resulted, was set out, and a knowledge of such defect by the appellants alleged.

The defense consisted of demurrers and general denial and a special plea, in which it was denied that the appellants knew of the defect from which her injury resulted, or that their car had been out of repair for sufficient length of time to enable them, by exercise of reasonable diligence, to have known of the defect; and they further alleged that the deceased was conductor of a train, which was a construction train, and that it was his duty to inspect the train and know that the same was in good order, and that he did know, or had the opportunity to know, by the exercise of ordinary care, of the defect from which his death resulted.

There was a trial before a jury and a verdict and judgment for the appellee for $1999.

The appellee having alleged in her petition, and so made proof, that her son was immediately killed by the injury which he received, the appellants asked the court to instruct the jury, in effect, that if the son was instantly killed, no action accrued to him which could survive to the mother, and that they would find for the defendants.

This charge was refused, and this is assigned as error.

In the State of Massachusetts, and perhaps in some other States, under statutes essentially different from those in force in this State, it has been held that in cases where the death is simultaneous with the wounding, no action lies; and this upon the ground that as no action ever accrued to the deceased none could survive. (Kearney v. Boston, etc., 9 Cush., 108.)

The Massachusetts statute gives a remedy to the executor or administrator of the deceased against the person who inflicted the injury, or against his executor or administrator, and in its language bears the construction that the action survives for injuries to the person of the deceased, which do not prove instantly fatal, and this for the benefit of his estate for the injury done to him, rather than that it gives an action to other persons for injuries which result to them by the death of the deceased.

The Massachusetts statute is as follows: " The action of trespass on the case for damages to the person shall hereafter survive, so that in the event of any person entitled to bring such action, or liable thereto, the same may be prosecuted or defended by or against his executor or administrator, in the same manner as if he were living." (Art. 1842, ch. 89, sec. 1.)

In Connecticut, under a similar statute, a different ruling was made. (Murphy v. New York, etc., 30 Conn., 184.)

The Constitution of this State provides that " Every person, corporation or company that may commit a homicide, through willful act, or omission, or gross neglect, shall be responsible in exemplary damages to the surviving husband, widow, or heirs of his or her body, or such of them as there may be, without regard to any criminal procedings that may or may not be had in relation to the homicide." (Constitution, art. 16, sec. 26.)

The statute provides that an action for actual damages on account of injuries causing the death of any persons may be brought in the following cases:

1. When the death of any person is caused by the negligence or

carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage coach or other vehicles for the conveyance of goods or passengers, or by the unfitness, gross negligence or carelessness of their servants or agents.

2. When the death of any person is caused by the wrongful act, negligence or unskillfulness of another. (R. S., 2899.)

"The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceeding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury." (R. S., sec. 2900.)

"The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been so caused, and the amounts recovered therein shall not be liable for the debts of the deceased." (R. S., 2903.)

"The action may be brought by all of the parties entitled thereto, or by any one or more of them, for the benefit of all." (R. S., 2904.)

Whether the provision of the Constitution above referred to, taken in connection with article 2901, Revised Statutes, would give an action to the mother for exemplary damages for an injury to the son, which resulted in death, cannot in this case be determined, for the charge of the court practically restricted the jury to actual damages.

The statutes above quoted evidence that the action thereby given is for the use and benefit of the beneficiaries named in the statute, to recover damages which have resulted to them by the death of the deceased, and in which the question whether an action ever accrued to the deceased is entirely unimportant, and we are of the opinion that the court did not err in refusing to give the instruction asked.

Appellants' fourth assignment of error, "That the court erred in permitting the plaintiff to read to the jury the following portion of the plaintiff's deposition, to-wit, ' witness had no means of support except her own labor and the labor of her son up to the date of his death,' the same having been objected to by the defendants upon the ground that it was irrelevant." The poverty of the plaintiff, or her helplessness, could not increase or diminish her claim to damages. In an ordinary action by a party injured, to recover damages therefor, the testimony would not have been admissible; but in this case, which is one by a mother to recover damages for the injury she has sustained in the death of her adult son, it was

necessary for her to show a damage of a pecuniary nature; yet such damages are not to be given merely in reference to loss of a legal right, but may be calculated with reference to the reasonable expectation which the mother had, resulting from her condition and disposition and ability of her son, during his life, to bestow upon her pecuniary benefit as of right, or the obedience to the dictates of filial duty, without legal claim. Such testimony as was offered was proper to show this reasonable expectation of pecuniary aid by the mother, but not for the purpose of measuring the damages. (H. & T. C. R. R. Co. v. Cowser and wife, Austin term, 1881; Pennsylvania R. R. Co. v. Kellar, 67 Pa. State, 301; Pa. R. R. Co. v. Adams, 55 Pa. State, 499; Pierce on Railroads, 398, 399; 2 Thompson on Negligence, 1289, 1292; Waits' Action and Defense, 478, and citations.)

The plaintiff alleged in her petition that she was without means of any kind for support, and that she was dependant upon and derived her support from her son. She further proved that her son lived with her two or three years after he arrived at age before he went abroad, and that she and family had the benefit of his wages. After he left home she derived nearly her whole support from the means sent her by her son. He was employed on the defendants' road at the time of his death, in June, 1881. She has no living child.

The indigent condition of the mother, under the ruling in some of the States, must be shown before proof of pecuniary advantages, which she might have expected from her adult son, would be heard. (Potter v. R. R. Co., 21 Wis., 317.) It is not necessary for us to decide whether this is so or not, and it is only referred to to illustrate the propriety of introducing this class of testimony.

The second error assigned is based upon the refusal of the court to give an instruction asked for the appellant.

This assignment is not presented by any proposition appropriate to it by appellant's brief, and we might, on that account, decline to consider it, but an inspection of the record shows that the charge as asked was substantially given in the charge of the court, and the refusal could not have predjudiced the appellant's case. The matter attempted to be presented in the brief, under this assignment of error, is not covered by it.

Appellants' third assignment of error is: That the court erred in overruling the motion of defendants to suppress the deposition

of John Mache, as shown in bill of exceptions No. 1, there being no interrogatories propounded to John Mache and no commission to take John Mache's deposition; but, upon the contrary, the interrogatories were propounded to John McKay and the commission authorized to take the deposition of John McKay.

The plaintiff took the deposition of John Mache in answer to interrogatories and cross-interrogatories propounded to John McKay. The officer taking the deposition certified as follows: "Answers and deposition of John Mache, of Harris county, to the accompanying interrogatories and cross-interrogatories propounded to him in the above entitled suit, taken before me, F. M. Poland, notary public, of Harris county." John Mache signs the answers. The officer certifies that the foregoing deposition of John Mache was taken before him. The plaintiff re-took the deposition, propounding the same interrogatories to John Mache, and the defendant propounded cross-interrogatories different from the former crosses.

The defendant made a motion to suppress the first deposition on the grounds stated in their assignment of error, which was overruled by the court, which is shown in their bill of exceptions, and the deposition was read to the jury by the plaintiff. When the plaintiff offered to read the second deposition the defendant objected, on the ground that it was the same witness whose answers were taken to the direct and cross-interrogatories addressed to John McKay, stating that the questions and answers were the same. The plaintiff admitted that the *direct* interrogatories and answers were the same, but that the *cross*-interrogatories and answers were different. The court overruled the defendants' objection to the reading of the cross interrogatories and answers, and permitted the same to be read in evidence by the plaintiff. There is no question made as to the identity of the person whose deposition was intended to be taken under the name of John McKay; nor does it appear that the name of the witness, which is signed John Mache, is not *idem sonans* as that written John McKay, and upon this ground alone, in the absence of a contest as to the identity of the party, the court did not err in overruling the motion to suppress the deposition. (Atkinson v. Wilson, 31 Texas, 643.)

The objection to the reading of the last deposition of John Mache, upon the ground that his former deposition had been read, ought to be held as a waiver of objections to the first deposition,

for it was an admission of the validity thereof, and by the objection the appellee was deprived of the opportunity to read the answers to the direct interrogatories, as taken in the second deposition.

The direct interrogatories and answers thereto are admitted to have been identical in both depositions, and the answers to the cross-interrogatories in deposition first taken are all substantially contained in the answers to the direct interrogatories, and in the answers to the interrogatories upon which the last deposition was taken; and if the introduction of the first deposition had been error, it would have been such error as could not have prejudiced the case of the appellant, for the same testimony was legally before the jury in the other deposition.

In such case, the judgment will not be reversed.

The witness Mache, in answer to a cross-interrogatory filed by the appellant, and which called for such a response, stated that Ed. Dowd (who preceded Kindred as conductor) said he reported the cars in bad condition, "and witness knows the cars were brought to Houston for repairs about two weeks before Kindred was killed. Witness don't know to whom report was made."

This evidence was objected to and the objection overruled, and ruling assigned as error.

The evidence was not admissible as *res gestæ*, but it is not perceived that it could have prejudiced the case, for the same witness made the same statement in answer to other interrogatories, and it was not objected to; and the witness Holland, without objection, made the same, or even a stronger, statement.

The eighth assignment of error, in substance, is that the verdict of the jury is contrary to the law as charged by the court, and against the law and evidence.

A part of the charge of the court, which is here inserted, is made a part of the assignment of error, to-wit:

"In order, then, for the plaintiff to recover, the proof must satisfy you, first, that the railroad company knew of said defects, or by use of reasonable diligence and care might have ascertained the defect, and so knowing, failed to repair it within a reasonable time; second, that Kindred did not know of said defect in fact, and that it was not such a defect as he could have ascertained with his senses by the use of ordinary care on his part at the time he attempted to use the brake; third, that it was not the duty of Kin-

dred to inspect the train and know its condition and see that it was repaired."

A summary of the evidence for the appellant, presented in an argumentative form, was also made a part of the assignment of error, which, on account of its great length, is not here inserted.

The charge of the court is as full as the appellant could ask; the testimony was conflicting; the district judge who tried the case, having witnessed the trial, has overruled a motion for a new trial, based upon the ground embraced in this assignment of error. We are not prepared to say that there is not evidence to support the verdict.

That the train was in bad condition, the evidence shows; that the particular defect that caused the injury had existed for some time, and was known to the conductor Dowd, who had charge of the train, until the Saturday night preceding the death of the deceased on Monday morning, under the evidence, cannot well be questioned, and even if it was the duty of the deceased to inspect the cars, it was largely a question of fact, whether the short time he had been in charge of the train was sufficient, by ordinary diligence to have enabled him to know of the defect. In the use of the train early on Monday morning, he was acting under positive orders, and at the furthest, he could not have had charge of the train until late on Saturday evening preceding his death on Monday morning.

"It is the personal duty of the master to see that suitable servants are employed; that his tools, machinery, etc., are reasonably safe, or to see at least that there is no negligence in employing or procuring them; and the delegate to whom he entrusts the duty stands in respect hereto in the master's place." (Cooley on Torts, 563.) "The master is charged with a duty to those serving him of which he cannot divest himself by any delegation to others. He is charged with such a duty as regards the safety of his premises, the suitableness of the tools, implements or material he procures or employs, or the servant he engages or makes use of. Whoever is permitted to exercise the master's authority in respect to these matters is charged with the master's duty; and the latter is responsible for a want of proper caution on the part of the agent or for his own personal negligence." (Cooley on Torts, 561; Railway Co. v. Dunham, 49 Texas, 188.)

There is no testimony in the record as to the care, skill and suita-

bleness of the conductor, Dowd, who had charge of the train until Saturday evening, except that which appears from the testimony of several witnesses in regard to the bad condition of the train when he turned it over to deceased. The deceased was certainly authorized to presume that he was a careful and skillful man, and that he had done his duty, in absence of knowledge to the contrary; and we cannot say that the short time which the deceased had been in charge of the train, even if we put it at the longest possible period, under the evidence, was sufficient to have enabled him to discover the particular defect from which the injury resulted by the exercise of such care as the law imposed upon him. The train consisted of fifteen cars, and the orders were to use them on Monday morning. The defect was one not likely to be discovered except by one using the brake, and even then might not be discovered by a most prudent and diligent man, in the hurry incident to setting several brakes.

The question is not whether this court would have come to a conclusion different from that arrived at by the jury from the evidence, but whether the evidence is so wholly insufficient to support the verdict as to authorize this court to say that the verdict is clearly wrong. Such must be the state of the evidence, or this court cannot annul the verdict of a jury whose province and duty it is to weigh the evidence and determine the credibility of witnesses.

It is claimed that the damages are excessive. The plaintiff was entitled to recover damages equal to the pecuniary benefit which she had a reasonable expectation of receiving during her life from her son.

The probabilities of life of the mother are shown by the evidence to have been seven years and ten months. This is the period during which she could have had a reasonable expectation of receiving pecuniary benefit from her son had he lived.

The evidence shows that the mother was seventy-two years old; that she was dependent upon the deceased almost, if not quite, wholly for a support; that her son had contributed to her support about $120 per year; that her health was poor at the time the depositions (taken a short time before the trial) were taken; that her son was earning $80 per month at the time of his death.

It is not claimed that the evidence was not sufficient to enable the jury to assess the damages, but that the damages assessed are exces-

sive, and that the sum of $650, which, under the evidence, would purchase the annuity of $120 for seven years and ten months, would be the limit of compensation. We think this erroneous and that the jury, if, in their opinion, the circumstances in proof justified it, might have found for a less or greater sum than the deceased had formerly furnished to his mother, which might be influenced by the increasing prospective wants of the mother, and the increasing ability of her son to administer to her necessities. The statute provides that "the jury may give such damages as they may think proportioned to the injury resulting from such death." (R. S., 2909.) The evidence in this class of cases, in the very nature of things, cannot furnish the measure of damages with that certainty and accuracy with which it may be done in other cases, hence the necessity and wisdom of leaving the question of damages to the discretion of the jury, which will be reviewed by this court, but their finding will not be set aside, unless it be made to appear that such discretion has been abused. In some of the States it is held, under statutes similar to those of this State, that a jury, upon their own knowledge of the every-day affairs of life, may estimate the damage, proof being made of the relationship and other surroundings, and keeping in view the fact that the damages are to be measured by the pecuniary loss of the aggrieved party. (O'Mara v. Hudson R. R. Co., 38 N. Y., 450; Oldfield v. N. Y. & H. R. R. Co., 14 N. Y., 319; Drew v. Sixth Ave. R. R. Co., 26 N. Y., 52; P. R. R. Co. v. Bantom, 54 Pa. State, 497; P. R. R. Co. v. McCloskey, admn'r., 23 Pa. State, 532.) Upon this point it is not necessary for us, in this case, to express an opinion as to the entire correctness of the rules laid down in the several cases cited. The damages in such cases are essentially indefinite, hence the law furnishes no definite measure therefor.

Being unable to say in this cause that the verdict is excessive, the judgment should be and is affirmed.

Dissenting opinion of Bonner, J.—I dissent from the conclusion reached by a majority of the court in this case.

The uncontradicted facts show that the deceased, John Kindred, was conductor of the train, and that one of his duties on this character of train was to inspect the same, and any cars found not to be in good order were, if necessary, to be set aside and reported to the proper officer for repairs; that the defect complained of in this case was of a very trivial character; that it was known to nearly, if not all, the other employees on the train; that it could have been discov-

ered by a very cursory examination; in fact, that it could hardly have escaped the notice of the deceased in the performance of the very act which resulted in his death, and that it could have been easily repaired with appliances at hand.

One of the witnesses testified that he did repair it after the accident, simply by putting on a nut which he found on the train. The very great preponderance of the testimony, including telegrams from the deceased himself, shows that he took charge of the train on the morning preceding that on which the accident happened.

Had the deceased made examination, or simply inquiry even of his co-employees on the train, he could, in all probability, have found out the defect. If this knowledge was obtained, then the company, under well settled principles of law, would not be liable under other facts in the case. That it was not obtained was occasioned by a want of proper diligence in the discharge of an express and important duty, and this, upon equally well settled principles, is sufficient to exonerate the company from liability.

The Mad River and Lake Erie R. R. Company v. Barber, 5 Ohio State, 541, is a case very much in point. There the conductor of a freight train, but which, unlike the train in this case, was not generally composed of the same cars under his control, sued for injury resulting from a defective link in a brake-chain, when acting, also, in the capacity of brakeman. It was one of his duties, as conductor, to inspect his trains.

*Held*, "That the conductor of a train of railway cars, being the representative of the company in the command and management of the train, and not being under the immediate control and direction of a superior or supervisory agent, is held to *ordinary and reasonable care and diligence*, not only in the management of the train, but also in the due inspection of the cars, machinery and appartus of the train, as to their sufficiency and safety, and if he receives an injury while neglecting that care and diligence required of him in the management of his train, or by means of any defect or insufficiency in the cars, machinery, or apparatus, with a knowledge of which he was running the train, or which could have been known to him by the exercise of that care and diligence required of him in the performance of his duty, or in other words, if his neglect in either of these particulars contributed as a *proximate cause* to the injury, he can have no right of action against the company for damages."

In my opinion, the inspection of cars was the first duty to which the deceased should have devoted his attention. Public policy, the preservation of his own life and that of his co-employees, to say nothing of the preservation of the property of the company, required of him great diligence in the performance of his duty, and the court should not relax the diligence of such officers, by giving compensation for injuries received by their own neglect.