1. Error was committed by the trial court in stating to the jury the issues involved, in omitting to state some of the defenses interposed by appellant. But this was an omission, and if appellant was not satisfied with it, a special charge should have been asked supplying the defect.
2. After submitting appellee's theory of the case, as alleged in her petition, the court instructed the jury as follows:
"If, however, you believe the defendant corporation did, and had done, all that could be required to render said bridge secure and safe for the passage of trains, and that the destruction of said bridge and the death of said Horace Daniels was the result of an unprecedented rainfall, and of such a character that no human foresight or skill could provide against, you will find for the defendant."
This charge is complained of, among other reasons, because it required of appellant a higher degree of care for the safety of its employes than is imposed by law.
This objection is well taken, and must result in a reversal of the case. A master, whether a common carrier or not, is only required to exercise ordinary and reasonable care for the protection of his servants. Our Supreme Court, in considering the liabilities of railway companies to their employes, has frequently applied this doctrine, and held that in furnishing appliances for their use, or in constructing and keeping in repair road beds and bridges, the true test of liability is, whether or not reasonable and ordinary care was exercised; in other words, whether or not the railroad company was guilty of negligence. Railway v. Oram, 49 Tex. 341; Railway v. Lyde,57 Tex. 505; Railway v. McCarthy, 64 Tex. 632
[64 Tex. 632]; Railway v. Bell, 75 Tex. 50.
Ordinary care is such care as an ordinarily prudent man would exercise under the circumstances; and a failure to exercise such care is negligence.
This charge required the jury, before they could return a verdict for appellant, to find, first, that it did all that could be required to render the bridge secure and safe for the passage of trains; and second, that the destruction of the bridge and the death of appellee's husband was the result of an unprecedented rainfall, and of such a character that no human foresight or skill could provide against.
The first part of this charge, though not accurate, as it omits the word "reasonably" before the word "required," certainly stated and submitted all that the law required of appellant, and it was error to state, as an additional prerequisite to a verdict for appellant, that the jury must also find that there was an unprecedented rainfall, and especially to require them to find that the rainfall was of such a characteras no human foresight or skill could provide against.
Even if the question of an unprecedented rainfall had been submitted disjunctively, the language in which it was submitted did not state the *Page 699 
law correctly in cases of this kind. It must be borne in mind that the injured party was appellant's employe; that when he entered the service in which he was engaged at the time of his death, he assumed all of the risks and hazards ordinarily incident to such service; that appellant is not liable to appellee for damages resulting from his death, unless the same was caused by appellant's negligence, as set out in appellee's petition, and that the burden rested upon appellee to prove, and not upon appellant to disprove, such negligence. In cases of loss or injury to freight while in the custody of a common carrier, the rule is different. In such cases the carrier is an insurer, and when sued for loss of or damage to freight received by it for transportation, all the plaintiff has to show is the delivery of his freight to the carrier, its loss or damage, and its value or the extent of the injury; and then the burden is cast upon the carrier to show such facts as will relieve it from liability. And it is generally in this class of cases that the rules of law which determine liability for loss or injury resulting from natural phenomena, called in the law books "the acts of God," are discussed. This arises out of the fact that in such cases proof of the utmost care and diligence will not excuse the carrier, and the acts of God and a few other special defenses are the only grounds upon which nonliability can be established. Laws. on Cont. of Carr., 5.
In the present case, it is true that appellant averred in its answer that the accident which caused the death of appellee's husband was occasioned by an act of God, consisting of an unprecedented rainfall, which no human agency could have foreseen or prevented.
But this was not all of its answer. It pleaded a general denial, and especially denied all charges of negligence. The general denial was all that it was necessary for it to plead to avail itself of the rules of law governing the liability of a railway company to its employes, as announced in the cases above cited; and the fact that it went further, and averred that the injury complained of was caused by the act of God, did not change the rules of law applicable to the case. The correct test of appellant's liability was whether or not it had been guilty of negligence as charged. And having filed a general denial, the burden was on appellee to prove negligence; and any evidence tending to disprove it, whether it showed that the accident resulted from an act of God or not, was admissible under the general denial.
Appellant asked, and the court gave, a special charge in reference to the alleged freshet, which was correct; but it did not cure the vice in the main charge, because they were in conflict, and the jury could not know which was the better law. Railway v. Robinson, 73 Tex. 277.
The other complaints as to charges given are not well founded.
3. Appellant has several assignments of error based upon the refusal of the court below to give instructions asked, which in effect attempt to *Page 700 
maintain the doctrine that if appellant selected ordinarily careful and competent employes to construct and maintain the bridge upon which the accident occurred, or exercised ordinary care in selecting said employes, and did not itself know, and by the exercise of ordinary diligence could not have known, of the insecure condition of the bridge, then it would not be liable.
The statute allowing suits for injuries resulting in death has been amended since this suit was brought, but at the time in question it gave a cause of action when the death of any person was caused by the negligence or carelessness of any proprietor, owner, charterer, or hirer of any railway, steamboat, or stage coach, or other vehicle for the conveyance of goods or passengers, or by the unfitness or gross negligence or carelessness of their servants or agents.
The appellee's cause of action, as disclosed by her petition, is founded upon the alleged negligence of appellant in the construction and maintenance of the bridge, and not upon the negligence, ordinary or gross, of its servants or agents.
The law imposed the duty upon appellant to construct and properly maintain all necessary bridges on its railway; and if it failed to do so, it can not escape liability because its employes to whom it had delegated the performance of these duties, personal to itself, were guilty of negligence, nor because it had exercised due care in selecting such employes.
Such negligence, as against the injured employe, was held in Railway v. Dunham, 49 Tex. 181, to be the negligence of the railway company, and not of the fellow servant; and we think the same doctrine applies to this case.
The case of Hendrick v. Walton, 69 Tex. 192, referred to in appellant's brief, is not analogous. There was no averment in that case that the defendant had failed to discharge any duty he owed to the plaintiff, but the charge was that his deputy (the agent) had committed a wrongful act which resulted in death.
The assignments of error that raise this question are not maintainable.
4. It appears that appellee served notice on appellant to take the deposition of Charles Emerly; that appellant filed cross-interrogatories to the witness; that a commission was issued and returned with a deposition signed and sworn to by Charles Emley. Appellant objected to this deposition being read as evidence, upon the ground that no notice to take said deposition had been served upon it, and no commission had issued to take said witness' deposition. This objection was correctly overruled. In our judgment, the two names are idem sonans. Besides, appellant crossed the interrogatories, and it is not made to appear that any injustice resulted to it. We do not think that the same strictness, in excluding testimony because of a variance, should apply in matters of this kind as is properly applied in many other instances. *Page 701 
5. A. F. Dignowity, John Gilcrease, and Charles Emley, nonexpert witnesses, were permitted, over appellant's objections, to state their opinions as to what caused the bridge to break down, producing the wreck which resulted in the death of Horace Daniels.
All of these witnesses stated the facts upon which their opinions were based, which brought their testimony, except a part of Charles Emley's, hereafter referred to, within the exception to the general rules which exclude the opinions of nonexpert witnesses. Railway v. Jarrard, 65 Tex. 560; Railway v. Locker, 78 Tex. 279; Whart. Ev., secs. 511, 513.
The witness Charles Emley was permitted to state, as his opinion, that had the timbers of the bridge been larger and sound, the bridge would have been sufficient for the uses of the railway company, except in extraordinary rainfalls.
The rule allowing nonexpert witnesses to give opinions based upon facts within their own knowledge, and stated to the jury or court trying the case, ought not to be extended so as to allow the witness to indulge in argument, or state how, in his opinion, the particular thing ought to have been, unless required to do so in an answer to questions on cross-examination. We think this part of Emley's testimony should have been excluded.
6. The question based upon the ruling of the court in permitting appellee to enter a remittitur after appellant's motion for a new trial had been overruled will not be considered, as it is not likely to arise again. Nor shall we pass on the assignment of error asserting that the verdict is not supported by the evidence.
The judgment is reversed and cause remanded.
Reversed and remanded.