THE INTERNATIONAL & G. N. R. R. CO. AND THE MISSOURI PACIFIC R. R. CO. V. MARTHA KINDRED.

(Case No. 1280.)

1. DAMAGES FOR NEGLIGENTLY CAUSING DEATH — RAILROAD.— Under the statutes (R. S., arts. 2899, 2900), an action for actual damages lies in favor of the parent, etc., for damages against a corporation for negligently causing death, whether an action ever accrued in favor of the deceased or not. Such action lies in case of the instantaneous death.

2. SAME — ACTION BY PARENT FOR DEATH OF SON.— In an action for damages by the surviving parent (mother) for the death of her adult son, her pecuniary condition may properly be alleged to show the reasonable expectation of pecuniary assistance from the deceased, but not for the purpose of increasing the amount of damages.

3. DEPOSITIONS — IDEM SONANS.— A commission to take depositions of John McKay was returned with testimony given by John Macke. The testimony was admitted,— it not appearing but that the words McKay and Macke were idem sonans. Held, that there was no error in admitting the testimony.

4. EVIDENCE.— See case where admission of hearsay testimony was held immaterial; the same testimony having been given without objection in answer to other questions.

5. PROVINCE OF JURY — NOTICE.— It was a question of fact whether a train-master charged with the duty of examining for defects, etc., in machinery, etc., actually knew or could have known the defect causing his own death. His duty as employee does not, as matter of law, relieve the company employing him from responsibility for negligence in the use of defective machinery.

6. FACT CASE.— See case of conflicting testimony where the court refused to set aside a verdict.

7. DAMAGES — ANNUITY.— The jury are not limited in damages to the present value of an annuity for the probable duration of life of the plaintiff, for the amount shown to have been actually furnished the plaintiff per annum during her life by the deceased son.

APPEAL from Anderson. Tried below before the Hon. Peyton F. Edwards.

The opinion contains a very full statement of the record.

*Greenwood & Gooch*, for appellants.

I. The right of appellee to maintain this action was purely a statutory right, and the appellee, to show herself entitled to maintain her action under the statute, must show that a right of action accrued to her dead son which could and did survive to her; but having shown in her petition, and by the evidence, that the death of her son was simultaneous with the injury, she has shown that no cause of action accrued to her son to survive to her. See R. S., arts. 2900, 2903; Const., art. XVI, sec. 26; Hollenbeck *v.* Berkshire R. Co., 9 Cush., 481; Kearney *v.* Boston & Worc. R. Co., id., 108; Bancroft *v.* Boston & W. R. Co., 11 Allen, 349; Pierce on Railroads, p. 385.

II. The court erred in overruling the motion of defendants to suppress the deposition of John Macke, as shown in bill of exceptions No. 1, there being no interrogatories propounded to John Macke, and no commission to take John Macke's deposition, but upon the contrary, the interrogatories were propounded to John McKay, and the commission authorized the taking of the deposition of John McKay. See R. S., art. 2219; Garner *v.* Cutler, 28 Tex., 182; Brown *v.* Barry, 3 Dall., 367.

III. The court erred in permitting the plaintiff to read to the jury the following portion of the plaintiff's deposition, to wit: "Witness had no means of support except her own labor, and the labor of her son up to the date of his death, the same having been objected to by the defendants upon the ground that it was irrelevant; that the poverty of the plaintiff, or her helplessness, could not increase or diminish her claim to damages." See Conant *v.* Griffin, 48 Ill., 411; Chicago & N. W. R. Co. *v.* Bayfield, 37 Mich.; Denver S. P. & P. R. Co. *v.* Woodward, 4 Col., 1, 162; Chicago & N. W. R. Co. *v.* Moranda, 93 Ill., 302; Illinois Cent. R. Co. *v.* Bache, 55 Ill., 379; Chicago & N. W. R. Co. *v.* Howard, 6 Brad. (Ill.), 569; Central R. Co. *v.* Moore, 61 Ga., 151; Potter *v.* Chicago & N. W. R. Co., 21 Wis., 372; 22 Wis., 615; Barley *v.* Chicago & A. R. Co., 4 Biss., 430; Pierce on Railroads, 397.

IV. The court erred in permitting the plaintiff to read the answer of John Macke, as follows, in answer to the third cross-interrogatory of defendants, to wit: "Ed. Dowd said he reported the cars in bad condition, and witness knows the cars were brought to Houston for repairs, about two weeks before Kindred was killed; witness don't know to whom report was made,"— the defendants having objected to so much of said testimony as relates to what Dowd said, upon the ground that it was hearsay. The statements of an agent are admissible to charge the principal, only when they are a part of the *res gestæ.* They are not admissible when made out of the presence of the principal and to a third person, having nothing to do with the subject matter, and at a time when the agent was not engaged in the business to which the controversy relates. Gonzales College *v.* McHugh, 26 Tex., 677; Whiteside *v.* Maegasel, 51 Ill.; Griffin *v.* Montgomery & C. R. R. Co., 26 Ga., 111; Robinson *v.* Fitchburg R. R. Co., 7 Gray, 92.

V. The verdict of the jury is contrary to the law as charged by the court, and against the law and evidence in this: 1. The court charged the jury —"In order, then, for the plaintiff to recover, the proof must satisfy you, first, that the railroad company knew of said defect, or by the use of reasonable diligence and care might have ascertained the defect, and so knowing, failed to repair it within a reasonable time. Second. That Kindred did not know of said defect in fact, and that it was not such a defect as he could have ascertained with his senses by the use of ordinary care on his part at the time he attempted to use the brake. Third. That it was not the duty of Kindred to inspect the train and know its condition, and see that it was repaired." Where a man has been employed by a railroad company as conductor to take charge of a train of cars to be used for construction and repairs at intermediate points on the railroad, and where it was one of his duties, imposed upon him as such conductor, to inspect such train, and to keep it in repair with the means furnished by the company, and if not furnished, to make a requisition on the company's principal repair officer for such means; and where a brake upon one of the cars in his charge got out of repair for the want of a nut or screw on the brake-wheel to the brake-rod, so as to make it dangerous in its use; and where the conductor failed to inspect said brake, its defect being patent or plain to be seen, or where the conductor did inspect said brake and knew of its defects, the same being easy to repair, and the conductor having time, ability, and the means at hand to

repair, failed to do so, and afterwards attempted to use such brake whilst the train was in motion, when the wheel thereof came off, which caused him to lose his balance and fall between the cars, and was crushed and instantly killed; and where the mother of such conductor brought an action for damages to herself against the railroad company, charging the railroad company with negligently causing the death of her son, and recovers a verdict and judgment for $1,999 against the railroad company,— in such a case such verdict and judgment was contrary to the law and the evidence, because in such case the deceased, by his negligence, contributed directly to his death, and such judgment should be reversed, because it is against the evidence.   See McAfee v. Robertson, 41 Tex., 357; Railroad Company v. Doyle, 49 Tex., 199; Pierce on Railroads, p. 379, and authorities noted 4 on same page; id.; p. 380, and authorities in notes 1 and 2.

VI.   Where the conductor of a construction train had knowledge of the defect in machinery, or being inspector of his own train, and having a reasonable opportunity to inform himself, and who ought to have known of such defects, he is presumed, by remaining in the particular service, to have assumed the risks of such voluntary exposure of himself in the use of such machinery, and he cannot recover for an injury resulting therefrom, and his knowledge has the same effect, whether the company was informed or ignorant of such defect.

VII.   Where a mother, who is seventy-two years of age and in feeble health, and whose probable time of life cannot exceed seven years and seven months, and whose son has been killed by a railroad company, at the age of thirty-three, and from whom, when living, she had a reasonable expectation of receiving $120 per annum during the remainder of her life, in an action against the railroad company for negligently causing the death of such son, and thereby destroying her prospect of receiving the $120 per annum during the balance of her life, cannot legally recover more money than would be necessary to purchase an annuity of $120 per annum during the remainder of her life, and any sum of money found in excess of that sum is not authorized by the law of the land.   Quin v. Moore, 15 N. Y., 432, 435; Telfor v. Northern R. Co., 1 Vroom, 188; Pym v. Great Northern R. Co., 4 Best. & S., 396; Paulmier v. Erie R. Co., 5 Vroom, 151; Kesler v. Smith, 66 N. C., 154; Burton v. Wil. & W. R. Co., 82 N. C., 504; Needham v. Grand Trunk R. Co., 38 Vt., 294; Pierce on the Law of Railroads, 393–399; 37 Mich., 205.

*R. A. Reeves,* for appellee.

I. The effect of the statute is not to keep alive a cause of action that belonged to the deceased, but to give a remedy for the damages the survivors may have sustained by the death of the injured party. The injury to the survivors is the basis of the action. R. S., p. 419; Houston & T. C. R. R. Co. *v.* Cowser and Wife, Texas Law Jour., August 10, 1881, vol. IV, No. 48, p. 755; Railroad Co. *v.* Nixon, 52 Tex., 19; Southern Law Review, vol. I, No. 4, New Series, pp. 720–3, 727; Murphy *v.* N. Y. R. Co., 30 Conn., 184.

II. Appellee submits as a counter proposition: It was competent to prove the indigent and dependent condition of the plaintiff, and the pecuniary advantage of the life of her son after he arrived at age, to enable the jury to estimate the damages resulting from his death. Houston & T. C. R. Co. *v.* Cowser and Wife, referred to under first assignment; Houston & T. C. R. Co. *v.* Nixon, 52 Tex., 25; Potter *v.* Railroad Co., 21 Wis., 377; 2 Thomp. on Neg., pp. 1289–1292, 1263, sec. 48; Chicago *v.* Powers, 42 Ill., 170; Atchison *v.* Twine, 9 Kan., 350; Pierce on Railroads, pp. 398, 399, citing numerous authorities in the notes.

III. Appellee denies that appellants' objections, or any of them, afford any sufficient ground to set aside the verdict and judgment. Kindred did not know of the defects in the brakes, in the exercise of reasonable skill and diligence, and was not informed by the defendants; and in view of the circumstances under which he was appointed conductor and took charge of the train, he was without the means or the opportunity or the time for inspection, and the defects were not discoverable with ordinary care and attention. H. & T. C. R. Co. *v.* Dunham, 49 Tex., 181; I. & G. N. R. Co. *v.* Doyle, 49 Tex., 190; H. & T. C. R. Co. *v.* Oram, 49 Tex., 341; I. & G. N. R. Co. *v.* Halloran, 53 Tex., 53; Gal., H. & S. A. R. Co. *v.* Delahunty, 53 Tex., 209; H. & G. N. R. Co. *v.* Randall, 50 Tex., 254; 2 Thomp. on Neg., pp. 972, 979–81; sec. 10, note 3, p. 985; sec. 5, p. 984; sec. 4, pp. 986, 1015; Pierce on Railroads, pp. 380–1; G., H. & S. A. R. R. Co. *v.* Lempke, Galveston term, 1882.

IV. The master is liable to his servant for injuries resulting from a defect in his machinery, although the negligence of a fellow-servant contributes to the accident. Railway Co. *v.* Dunham, 49 Tex., 188, 189; 2 Thomp. on Neg., pp. 980, 981; Cayzer *v.* Taylor, 10 Gray, 274, and other authorities cited above.

V. The plaintiff was entitled to recover damages equal to the pecuniary interest she had in the life of her son, arising from his labor and earnings, care and attention for the time her son would

probably have lived, of which she was deprived by his death wrongfully by the defendants, and the verdict of the jury is supported by law and the evidence. R. S., p. 419, arts. 2909, 2899; H. & T. C. R. Co. v. Cowser and Wife, Texas Law Jour., p. 755; Railway Co. v. Nixon, 52 Tex., 19; Pierce on Railroads, pp. 393–399; Southern Law Review, pp. 714, 715, 716, referring to Penn. R. Co. v. Keller, 67 Pa. St., 300; McIntyre v. N. Y. C. R. Co., 37 N. Y., 287; Sherman v. West Stage Co., 24 Iowa, 515; Ill. R. Co. v. Weldon, 52 Ill., 290; Baltimore R. Co. v. State, 33 Md., 542; 2 Thomp. on Neg., pp. 1289–1294; id., 1263, sec. 48, referring to Chicago v. Powers, 42 Ill., 170.

STAYTON, ASSOCIATE JUSTICE.— This action was brought by Martha Kindred against the International & Great Northern Railroad Company and its lessee, the Missouri Pacific Railroad Company, to recover damages alleged to have resulted to her by the killing of her son, John Kindred, which she alleged occurred through the negligence of the appellants, in that they did not keep the train in good repair upon which her son was employed as conductor. The special defect in a car, from which the injury resulted, was set out, and a knowledge of such defect by the appellants alleged.

The defense consisted of demurrers; general denial, and a special plea in which it was denied that the appellants knew of the defect from which the injury resulted, or that their car had been out of repair for sufficient length of time to enable them, by the exercise of reasonable diligence, to have known of the defect; and they further alleged that the deceased was the conductor of the train, which was a construction train, and that it was his duty to inspect the train and know that the same was in good order; and that he did know, or had opportunity to know, by the exercise of ordinary care, of the defect from which his death resulted.

There was a trial before a jury, and a verdict and judgment for the appellee for $1,999.

The appellee having alleged in her petition, and so made proof, that her son was instantly killed by the injury which he received, the appellants asked the court to instruct the jury, in effect, that if the son was instantly killed, no action accrued to him which could survive to the mother, and that they would find for the defendants.

This charge was refused, and this is assigned as error.

In the state of Massachusetts, and perhaps in some other states, under statutes essentially different from those in force in this state, it has been held that in cases where the death is simultaneous with

the wounding, no action lies; and this upon the ground that, as no action ever accrued to the deceased, none co uld survive. Kearney *v.* Boston, etc., 9 Cush., 108.

The Massachusetts statute gives a remedy to the executor or administrator of the deceased against the person who inflicted the injury, or against his executor or administrator, and in its language bears the construction that the action survives for injuries to the person of the deceased which do not prove instantly fatal, and this for the benefit of his estate, for the injury done to him, rather than that it gives an action to other persons for injuries which result to them by the death of the deceased.

The Massachusetts statute is as follows:   "The action of trespass on the case for damage to the person shall hereafter survive, so that in the event of the death of any person entitled to bring such action, or liable thereto, the same may be prosecuted or defended by or against his executor or administrator, in the same manner as if he were living."   Art. 1842, ch. 89, sec. 1.

In Connecticut, under a similar statute, a different ruling was made.   Murphy *v.* New York, etc., 30 Conn., 184.

The constitution of this state provides that "Every person, corporation or company that may commit a homicide, through willful act or omission, or gross neglect, shall be responsible in exemplary damages to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide." Const., art. XVI, sec. 26.

The statutes provide that "An action for actual damages on account of injuries causing the death of any person, may be brought in the following cases:  1. When the death of any person is caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stage-coach or other vehicle for the conveyance of goods or passengers, or by the unfitness, gross negligence or carelessness of their servants or agents.  2. When the death of any person is caused by the wrongful act, negligence or unskillfulness of another."   R. S., 2899.

"The wrongful act, negligence, carelessness, unskillfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury."   R. S., 2900.

"The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose

death shall have been so caused, and the amount recovered therein shall not be liable for the debts of the deceased." R. S., 2903.

" The action may be brought by all of the parties entitled thereto, or by any one or more of them for the benefit of all." R. S., 2904.

Whether the provision of the constitution above referred to, taken in connection with art. 2901, R. S., would give an action to the mother for exemplary damages for an injury to the son which resulted in death, need not in this case be determined, for the charge of the court practically restricted the jury to actual damages.

The statutes above quoted evidence that the action thereby given is for the use and benefit of the beneficiaries named in the statute, to recover damages which have resulted to them by the death of the deceased, and in which the question, whether an action ever accrued to the deceased, is entirely unimportant, and we are of the opinion that the court did not err in refusing to give the instruction asked.

Appellants' fourth assignment of error is: That the court erred in permitting the plaintiff to read to the jury the following portion of the plaintiff's deposition, to wit: " Witness had no means of support except her own labor, and the labor of her son up to the date of his death, the same having been objected to by the defendants upon, the ground that it was irrelevant; that the poverty of the plaintiff or her helplessness, could not increase or diminish her claim to damages."

In an ordinary action by a party injured, to recover damages therefor, the testimony would not have been admissible; but in this case, which is one by a mother to recover damages for the injury which she has sustained in the death of her adult son, it was necessary for her to show a damage of a pecuniary nature; yet such damages are not to be given merely in reference to the loss of a legal right, but may be calculated with reference to the reasonable expectation which the mother had, resulting from her condition and the disposition and ability of her son, during his life, to bestow upon her pecuniary benefit as of right or in obedience to the dictates of filial duty without legal claim. Such testimony as was offered was proper to show this reasonable expectation of pecuniary aid by the mother, but not for the purpose of increasing the damages. H. & T. C. R. Co. v. Cowser and Wife, Austin term, 1881; Pennsylvania R. R. Co. v. Keller, 67 Pa. St., 301; Penn. R. R. Co. v. Adams, 55 Pa. St., 499; Pierce on Railroads, 398, 399; 2 Thomp. on Neg., 1289–1292; Wait's Act. and Def., 478, and citations.

The plaintiff alleged in her petition that she was without means

of any kind for her support, and that she was dependent upon and derived her support from her son. She further proved that her son lived with her two or three years after he arrived at age before he went abroad, and that she and family had the benefit of his wages. After he left home she derived nearly her whole support from the means sent her by her son. He was employed on the defendants' road at the time of his death in June, 1881. She has no living child.

The indigent condition of the mother, under the ruling in some of the states, must be shown before proof of the pecuniary advantage which she might have expected from her adult son would be heard. Potter v. R. Co., 21 Wis., 317. It is not necessary for us to decide whether this is so or not, and it is only referred to to illustrate the propriety of introducing this class of testimony.

The second error assigned is based upon the refusal of the court to give an instruction asked for the appellant.

This assignment is not presented by any proposition appropriate to it by appellant's brief, and we might on that account decline to consider it; but an inspection of the record shows that the charge as asked was substantially given in the charge of the court, and the refusal could not have prejudiced the appellant's case. The matter attempted to be presented in the brief under this assignment of error is not covered by it.

Appellant's third assignment of error is: That the court erred in overruling the motion of defendants to suppress the deposition of John Macke, as shown in bill of exceptions No. 1, there being no interrogatories propounded to John Macke, and no commission to take John Macke's deposition; but upon the contrary, the interrogatories were propounded to John McKay, and the commission authorized the taking of the deposition of John McKay.

The plaintiff took the deposition of John Macke in answer to interrogatories and cross-interrogatories propounded to John McKay. The officer taking the deposition certified as follows: "Answers and depositions of John Macke, of Harris county, to the accompanying interrogatories and cross-interrogatories propounded to him in the above entitled suit, taken before me, F. M. Poland, notary public of Harris county." John Macke signs the answers. The officer certifies that the foregoing deposition of John Macke was taken before him. The plaintiff retook the deposition, propounding the same interrogatories to John Macke, and the defendant propounded cross-interrogatories different from the former crosses.

The defendants made a motion to suppress the first deposition on

the grounds stated in their assignment of error, which was overruled by the court as shown in their bill of exceptions, and the deposition was read to the jury by the plaintiff. When the plaintiff offered to read the second deposition, the defendants objected on the ground that it was the same witness whose answers were taken to the direct and cross-interrogatories addressed to John McKay, stating that the questions and answers were the same. The plaintiff admitted that the direct interrogatories and answers were the same, but that the cross-interrogatories and answers were different. The court overruled the defendants' objection to the reading of the cross-interrogatories and answers, and permitted the same to be read in evidence by the plaintiff.

There is no question made as to the identity of the person whose deposition was intended to be taken under the name of John McKay, nor does it appear that the name of the witness which is signed John Macke is not *idem sonans* as that written John McKay, and upon this ground alone, in the absence of a contest as to the identity of the party, the court did not err in overruling the motion to suppress the deposition. Atkinson *v.* Wilson, 31 Tex., 643.

The objection to the reading of the last deposition of John Macke, upon the ground that his former deposition had been read, ought to be held as a waiver of objections to the first deposition, for it was an admission of the validity thereof; and by the objection the appellee was deprived of an opportunity to read the answers to the direct interrogatories as taken in the second deposition.

The direct interrogatories and answers thereto are admitted to have been identical in both depositions; and the answers to the cross-interrogatories in deposition first taken are all substantially contained in the answers to the direct interrogatories, and in the answers to the cross-interrogatories upon which the last deposition was taken; and if the introduction of the first deposition had been error, it would have been such error as could not have prejudiced the case of the appellant, for the same testimony was legally before the jury in the other deposition. In such case a judgment will not be reversed.

The witness Macke, in answer to a cross-interrogatory filed by the appellant, and which called for such a response, stated that " Ed. Dowd (who preceded Kindred as conductor) said he reported the cars in bad condition, and witness knows the cars were brought to Houston for repairs, about two weeks before Kindred was killed; witness don't know to whom report was made." This evidence was objected to, objection overruled, and ruling assigned as error. The

evidence was not admissible as *res gestœ*, but it is not perceived that it could have prejudiced the case, for the same witness made the same statement in answer to other interrogatories and it was not objected to; and the witness Holland, without objection, made the same or even a stronger statement.

The eighth assignment of error in substance is, that the verdict of the jury is contrary to the law as charged by the court, and against the law and evidence.

A part of the charge of the court which is here inserted is made a part of this assignment of error, to wit: "In order, then, for the plaintiff to recover, the proof must satisfy you, first, that the railroad company knew of said defect, or by the use of reasonable diligence and care might have ascertained the defect, and so knowing, failed to repair it within a reasonable time. Second. That Kindred did not know of said defect in fact, and that it was not such a defect as he could have ascertained with his senses by the use of ordinary care on his part at the time he attempted to use the brake. Third. That it was not the duty of Kindred to inspect the train and know its condition, and see that it was repaired."

A summary of the evidence for the appellant, presented in an argumentative form, was also made a part of this assignment of error, which, on account of its great length, is not here inserted.

The charge of the court is as full as the appellants could ask; the testimony was conflicting; the district judge who tried the cause having witnessed the trial, has overruled a motion for a new trial, based upon the ground embraced in this assignment of error. We are not prepared to say that there is not evidence·to support the verdict.

That the train was in bad condition the evidence shows, and that the particular defect which caused the injury had existed for some time and was known to the conductor, Dowd, who had control of the train until the Saturday night preceding the death of the deceased on Monday morning, under the evidence, cannot well be questioned. Even if it was the duty of the deceased to inspect the cars, it was largely a question of fact whether the short time which he had been in charge of the train was sufficient by ordinary diligence to have enabled him to know of the defect; in the use of the train early on Monday morning he was acting under positive orders, and at the farthest he could not have had charge of the train until late on Saturday evening preceding his death on Monday morning.

" It is the personal duty of the master to see that suitable servants are employed, that his tools, machinery, etc., are reasonably safe, or at least to see that there is no negligence in employing or procuring

them; and the delegate to whom he entrusts the duty stands, in respect thereto, in the master's place." Cooley on Torts, 563.

"The master is charged with a duty to those serving him of which he cannot divest himself by any delegation to others. He is charged with such a duty as regards the safety of his premises, the suitableness of the tools, implements or materials he procures or employs, and the servants he engages or makes use of. Whoever is permitted to exercise the master's authority in respect to those matters is charged with the master's duty, and the latter is responsible for a want of proper caution on the part of the agent, as for his own personal negligence." Cooley on Torts, 561; Railway Co. v. Dunham, 49 Tex., 188.

There is no testimony in the record as to care, skill and suitableness of the conductor Dowd, who had charge of the train until Saturday evening, except that which appears from the testimony of several witnesses, in regard to the bad condition of the train when he turned it over to the deceased. The deceased was certainly authorized to presume that he was a careful and skillful man and that he had done his duty, in the absence of knowledge to the contrary, and we cannot say that the short time which the deceased had been in charge of the train, even if we put it at the longest possible period, under the evidence, was sufficient to have enabled him to discover the particular defect from which the injury resulted, by the exercise of such care as the law imposed upon him. The train consisted of about fifteen cars, and the orders were to use them on Monday morning; the defect was one not likely to be discovered except by one using the brake, and even then might not be discovered by a most prudent and diligent man in the hurry incident to setting several brakes.

The question is not whether this court would have come to a conclusion different from that arrived at by the jury from the evidence, but whether the evidence is so wholly insufficient to support the verdict as to authorize this court to say that the verdict is clearly wrong. Such must be the state of the evidence, or this court cannot annul the verdict of a jury whose province and duty it is to weigh the evidence and determine the credibility of witnesses.

It is claimed that the damages are excessive. The plaintiff was entitled to recover damages equal to the pecuniary benefit which she had a reasonable expectation of receiving during her life from her son.

The probabilities of life of the mother are shown by the evidence to have been seven years and ten months. This is the period during which she could have had a reasonable expectation of receiving pecuniary benefit from her son had he lived.

The evidence shows that the mother was seventy-two years old; that she was dependent upon the deceased almost, if not quite, wholly, for a support; that the son had contributed to her support about $120 per year; that her health was poor at the time the depositions (taken a short time before the trial) were taken; that the son was earning $80 per month at the time of his death.

It is not claimed that the evidence was not sufficient to enable the jury to assess the damages, but that the damages assessed are excessive, and that the sum of $650, which, under the evidence, would purchase an annuity of $120 for seven years and ten months, would be the limit of compensation. We think this erroneous, and that the jury, if in their opinion the circumstances in proof justified it, might have found for a less or greater sum than the deceased had formerly furnished to his mother, which might be influenced by the increasing prospective wants of the mother and the increasing ability of the son to administer to her necessities.

The statute provides that "The jury may give such damages as they think proportioned to the injury resulting from such death." R. S., 2909. The evidence in this class of cases, in the very nature of things, cannot furnish the measure of damages with that certainty and accuracy with which it may be done in other cases; hence the necessity and wisdom of leaving the question of damages to the discretion of the jury, which will be revised by this court, but their finding will not be set aside unless it be made to appear that such discretion has been abused. In some of the states it is held, under statutes similar to those of this state, that a jury upon their knowledge of the every-day affairs of life, may estimate the damages, proof being made of the relationship and other surroundings, and keeping in view the fact that the damages are to be measured by the pecuniary loss to the aggrieved party. O'Mara v. Hudson R. R. R. Co., 38 N. Y., 450; Oldfield v. N. Y. & H. R. R. Co., 14 N. Y., 319; Drew v. Sixth Avenue R. Co., 26 N. Y., 52; P. R. R. Co. v. Bantom, 54 Pa. St., 497; P. R. Co. v. McClosky, Adm'r, 23 Pa. St., 532. Upon this point it is not necessary for us in this case to express any opinion as to the entire correctness of the rule laid down in the several cases cited. The damages in such cases are essentially indefinite; hence the law furnishes no definite measure therefor.

Being unable to say in this cause that the verdict is excessive, the judgment must be and is affirmed.

AFFIRMED.

[Opinion delivered December 17, 1882.]

## DISSENTING OPINION.

BONNER, ASSOCIATE JUSTICE.— I dissent from the conclusion reached by a majority of the court in this case.

The uncontradicted facts show that the deceased, John Kindred, was conductor of the train, and that one of his duties on this character of train was to inspect the same, and any cars found not to be in good order were, if necessary, to be set aside and reported to the proper officer for repairs. That the defect complained of in this case was of a very trivial character; that it was known to nearly if not to all the other employees on the train; that it could have been discovered by a very cursory examination; in fact, that it could hardly have escaped the notice of the deceased, in the performance of the very act which resulted in his death; and that it could have been easily repaired with appliances at hand.

One of the witnesses testified that he did repair it after the accident, simply by putting on a nut which he found on the train. The very great preponderance of the testimony, including telegrams from the deceased himself, shows that he took charge of the train on the morning preceding that on which the accident happened. Had the deceased made examination, or a simple inquiry, even, of his co-employees on the train, he would in all probability have found out the defect. If this knowledge was obtained, then the company, under well settled principles of law, would not be liable under the other facts in the case; that it was not obtained, was occasioned by a want of proper diligence in the discharge of an express and important duty, and this, upon equally well settled principles, is sufficient to exonerate the company from liability.

The Mad River & Lake Erie R. R. Co. v. Barber, 5 Ohio St., 541, is a case very much in point. There the conductor of a freight train, but which, unlike the train in this case, was not generally composed of the same cars under his control, sued for injury resulting from a defective link in a brake-chain when acting also in the capacity of brakeman. It was one of his duties as conductor to inspect his trains. *Held*, "that the conductor of a train of railway cars, being the representative of the company in the command and management of the train, and not being under the *immediate* control and direction of a superior or supervisory agent, is held to *ordinary and reasonable care and diligence*, not only in the management of the train, but also in the due inspection of the cars, machinery and apparatus of the train, as to their sufficiency and safety; and if he receives an injury while neglecting that care and diligence required of him in the management of his train, or by means of

any defect or insufficiency in the cars, machinery or apparatus, with a knowledge of which he was running the train, or which could have been known to him by the exercise of that care and diligence required of him in the performance of his duty; or, in other words, if his neglect in either of these particulars contributed as a *proximate cause* to the injury, he can have no right of action against the company for damages."

In my opinion, the inspection of the cars was the first duty to which the deceased should have devoted his attention. Public policy, the preservation of his own life and that of his co-employees, to say nothing of the preservation of the property of the company, required of him great diligence in the performance of this duty, and the courts should not relax the diligence of such officers by giving compensation for injuries received by their own neglect.