## TEXAS & PACIFIC RAILWAY CO. vs. MARY BURNS.

IN COURT OF APPEALS, AUSTIN TERM, 1884.

*Practice—Depositions.*—When depositions have been on file for more than one entire day before trial commences, no objection to the form or manner of taking the same can be heard, unless in writing, with notice before trial begins.

*Same—Notice* of motions is given by filing same with the papers of the cause and entering it on the motion docket.

*Same—Motions* which do not relate to the merits may be disposed of at any time before the trial of the cause. It follows that when depositions have been on file for more than one day, motion to suppress the same must be filed, and notice given.

before the case is called, and must be acted upon before either party has announced,

*Damages—Contribution—Evidence* of the pecuniary condition of the plaintiff in an action for damages is inadmissible to increase damages, but where the relation of mother and son was proved to have existed, and it was shown that the son had contributed to her support, such evidence was admissible to show that such contribution would have continued had the son lived.

*Same—Negligence.*—As tending to show admission of previous negligence, it was proposed to prove that just after the injury the company made repairs where the injury occurred. HELD, properly excluded. See the opinion in extenso on the question.

*Reasonable care—Liability of Railroad.*—While the employe of a railroad assumes the risks incident to his employment, the company, with respect to him, is required to exercise reasonable care in providing a safe road bed, suitable engines, cars, etc.; and is liable for injuries resulting from defects which it knew, or by reasonable diligence might have known.

*"Gross" Negligence* is the want of slight care and deligence. See the opinion for facts held not to constitute gross negligence, wherefore it was error to charge on examplary damages.

*Measure of Damages—Evidence.*—See state of case wherein the correct measure of damages was the probable amount, the deceased, if he had not been killed, would have contributed to the support of the appellee. And note the necessary inquiry in determining this question.

Appeal from Tarrant county.

Wellborn, Leake & Henry, for the appellant.
J. C. Scott and Ball & McCart, for the appellee.

### STATEMENT.

On August 12, 1881, appellee brought this suit against appellant, alleging in substance that she is a *feme sole* and reside in the State of Ohio, that appellant owned and operated a railroad from Fort Worth to Baird, and employed a large number of operatives. Was running a great many trains over its road daily, transporting heavy machinery and construction material, all of which required great skill and care on the part of appellant for the protection of its servants; that her son, Frank P. Burns, was a locomotive engineer, employed by appellant; and that on June 17, 1881, he was required to draw a train of freight cars from Fort Worth to Baird, and while so engaged, and under the orders and control of defendant, and

while filling the tank with water (according to the requirements of the appellant) three miles east of Baird, at 3 o'clock in the morning, and while very dark, the said Frank P. was cruelly, wantonly, recklessly and negligently killed by appellant as set forth.

Appellee alleged that there was a very heavy grade from the water tank to Baird, and that the road curved within 300 or 400 feet of the tank, so approaching objects could not be seen until very close; that the appellants' yard and side track at Baird is on a steep hill side, inclining eastward towards the tank; that the appellant negligently and wantonly placed its side track upon such steep hill side, and without proper regard for the safety of its employees. And further, appellant, "through its utter want of care and regard for the lives of its employees, placed the most dangerous kind of switch at the lower or eastern end of its side track, to-wit: "A split switch, so that any car escaping on the side track, could run through the switch on to the main track; and the appellant wilfully, negligently and with a conscious indifference to its duty in the premises, and for the safety of its employees, failed to put a proper kind of switch at that place, or to place any kind of appliance or device (of which there were many easily to be had) to insure the usual and proper degree of safety to its employes and others; that appellant had a number of cars on its said side track; that they were lacking brakes and appliances to make them safe; that eleven cars, loaded with railroad iron, agregating 132 tons, on wheels, so placed on the side track by appellant, by reason of the want of the proper appliances to make them safe and keep them on the side track, escaped therefrom, and moved by their own specific gravity, ran through that split switch, and with accellerating speed down the steep hill, ran into the locomotive on which Frank P. Burns was employed, with such great force as to drive the rails full length through the boiler, thus mashing and scalding him to death, scalding the flesh from his bones.

Appellee alleged she is a poor woman, not able to support herself; that Frank P. supported her; that she was advanced in years, and that by the loss of her son, who was affectionate and a comfort to her in her declining years, she had suffered actual damage $25,000; that because appellant was so cruelly and outrageously negligent and wanton, and exhibited such conscious indifference to human life, she asked $30,000 examplary damages.

Defendant (appellant) filed a plea to the jurisdiction (which was afterwards waived,) special demurrer to claim for examplary damages, a general denial, and a plea of contributory negligence.

The court overruled appellant's special exceptions and the cause called regularly for trial on September 11, 1882. Plaintiff and defendant announced ready for trial ; the jury returned a verdict for plaintiff for $5000 actual damages, ahd $2500 examplary damages.

Defendant filed a motion for a new trial which was overruled on September 30, and before the court soted on the motion, the plaintiff entered a remittitur of $1500 actual damages, and $1000 examplary damages, and the court overruled motion for new trial, to which the defendant excepted and gave notice of appeal and assigned errors.

## OPINION.

It is claimed that the court erred in refusing to entertain appellant's motion to suppress the depositions of appellee and her son, George Burns. These motions were filed after appellee had announced ready for trial. The depositions had been on file in the cause for more than six months at the time of the trial, and the court below refused to entertain the motions on the ground that they were made too late.

When deposition have been on file for more than one entire day before the trial commences, no objection to the form or manner of taking the same can be heard, unless in writing, and notice thereof given before the trial commences. (Rev. Stats. art. 2235.)

Notice of motion in a pending suit is given by filing the same with the papers of the cause and having the same entered upon the motion docket during the term. (Rev. Stats. art. 4541) It is also provided that where the motion relates to a pending suit, which does not go to the merits, that it may be disposed of at any time before the trial of the cause. (Rev. Stats. art. 1454.)

In the rules for the District Court it was provided that "when notice shall be given of objections to the form or manner of taking or returning depositions, either party may require it to be put on the motion docket, and tried as other motions; provided, if not tried sooner, it shall be decided before either party shall be required to announce readiness for trial on the facts. (Rule 23, 47 Tex, 621.)

When the several provisions of the statute quoted above are con-

sidered in connection with rule 23, it appears with sufficient certainty, that when the depositions have been on file for more than one entire day before the trial, the motions to suppress the same must be filed and notice given before the case is called for trial, and the motions disposed of before either party has announced ready for trial on the merits.

Before announcing upon the merits the party has a right to have such motions disposed of, so that, if sustained, and his evidence suppressed, he can act advisedly in making his announcement.

Appellee having announced ready upon the evidence, to which no objection had then been made, and without any notice that any such objections would be urged, could not thereafter be deprived of the benefit of that evidence on account of the former manner of taking.

It is claimed that the court erred in admitting evidence as to the pecuniary condition of appellee. Such evidence ia not admissible for the purpose of increasing the damages, which, under the circumstaces the party might be entitled to recover. But as the relationship of mother and son had been shown, and that he had been contributing to her support, evidence showing that she had no means of support, would be admissible as tending to show the probability that such contributions would have been continued, had the son lived. (Railway Co. vs. Kindred, 57 Texas, 498.)

Appellant claims that the court erred in admitting evidence as to the improvement made at that point after the injury. From an examination of the whole evidence it appears that the appellant retained the switch, but soon after the accident placed just east of it what, in railroad parlance, is known as a "safety switch," which is rarely used upon railroads. It is constructed and operated upon the same principle as the stub switch, and requires the continuous presence of a switch man to render it effective. The ends of the rails on the main track are adjustable, and may be so moved by the lever or draw as to disjoint and separate them, and the ends of such rails be thereby placed in conjunction with the end of those constituting the swith; so that cars in motion on the main track may thereby be run off on the switch. As to whether additional precautions and safeguards taken by the company, soon after an injury has occurred, constitute such acts of admission, as ought to be per-

mitted to go to the jury as evidence of negligence, is a question upon which there is a conflict of authority.

So far as the number of adjudicated cases are concerned the weight of authority is that to a limited extent such evidence is admissible. In Pearce on Railroads, 284 note, the authorities are cited which show the conflict. The author, however, concludes that such evidence is not admissible.

Perhaps conditions might exist that would render such evidence admissible, but as a general rule, upon principle, as well as a matter of public policy, such evidence ought not to be admitted. It is a matter of common knowledge that railroad tracks and machinery as well as all other instrumentalities, used in operating trains, are continually undergoing repairs and being improved. Undoubtedly the public is greatly interested in the continuance of such improvements.

Where accidents have directed the attention of the company to a particular portion of the road-bed or other instrumentality that by additional safeguards would be rendered more safe, to hold as a general rule that if the desired improvement is made, that the company thereby admits that it had been negligent, would result in deterring the company from promptly making the improvement. Indeed, it would be a harsh rule, if every change for the better is to be considered as evidence showing former negligence.

In this case it appears that the improvement did not consist in the substitution of an approved and tested instrumentality, for one that was not in general use, and had not been tested and approved. The improvement consisted of the addition of a safety-switch, which seems to be but seldom used upon railroads. Under such circumstances we conclude that the court erred in admitting the evidence over the objections of the appellant.

Without undertaking to consider the remaining errors assigned, we will briefly consider the question of gross and ordinary negligence as presented by the record.

From the evidence it appears that the split-switch is in about as general use upon railroads as the stub-switch; that there is a difference of opinion among those who are skilled in such matters, as to the relative safety and merits of each.

Those witnesses who speak as to the condition of the track, yard, switches, etc., all seem to be experienced railroad men, and they

generally concur in this, that each of these switches possess advantages and disadvantages; that the use of the split-switch at that point was only more dangerous than the stub-switch, because of the unevenness of the ground; and if the employes in charge of the yard had discharged their duty by setting the brakes or blocking the wheels of cars placed upon the siding, that the use of the split-switch would have been reasonably safe.

It appears from the evidence, that while the split-switch at that point was in some respects more unsafe than would have been the stub-switch; that in other respects the use of the latter would be more dangerous.

For instance, cars on the sidings which were not properly stayed by brakes or blocks were liable to run through the split-switch and on to the main track and thence down the grade east for three or four miles, thereby endangering incoming trains from that direction. While by the use of the stub-switch such cars would be de-railed at the terminus of the siding, which would obviate the danger to such incoming trains, but would greatly enhance the danger to such employes as might be in such cars. Another disadvantage attending the use of the stub-switch, as appears from the evidence, and which does not attend the use of the split-switch, is this : At the point of junction between the rails on the main track and those of the siding there is necessarily a loose joint, by which passing trains are liable to be de-railed. At this point that danger is enhanced to east bound trains, as it is upon a down grade.

If therefore a train passing east upon the main track should be wrecked at that point, by reason of the use of a stub switch and an injury result therefrom, or if in loading or unloading cars upon the siding, the employe is injured by reason of that switch, in either case it might be claimed with some show of reason, that due care upon the part of the company would have required the use of the split switch.

Then reversing the position, should the injury occur upon the main line by reason of cars escaping from the yard, then with an equal show of reason it might be claimed that the stub switch should have been used.

The company is under obligations to its employes to exercise reasonable care in providing and maintaining a safe road-bed, and suitable engines, cars and other instrumentalities, and is consequent-

ly liable to them for injuries resulting from defects which it knew, or could have known and prevented by the exercise of reasonable care. And the same degree of care must be exercised in keeping these instrumentalities in good condition. While the employe assumes the risks incident to the employment, he does not assume those which may be superadded by the wrongful or negligent acts of the company. When the company has exercised reasonable care, in making provisions for the safety of its employes, this is all that is required, for it does not insure the road-bed, or the machinery. Nor is the company liable, when due care has been used, for a mistake of judgment in the choice of instrumentalities, or the mode of constructing the road. (Pierce on Railroads, 370, et seq. and authorities cited.)

In the nature of things, the points along the line, at which stations and yards are to be established, must be left to the judgment and discretion of the company, and the fact that a safer yard could have been selected either east or west of Baird, is no evidence of negligence upon the part of the company. But having established the yard upon a grade; if the company, in view of all the attending facts and circumstances, failed to exercise reasonable care in providing for the safety of its employes, then it would be liable for injuries resulting from such failure. By reasonable care is meant such as would have been taken under like circumstances by an ordinary prudent person.

Both in the constitution and statute the term "gross negligence" is used. The most approved definition of the term is that given by Judge Story in his work on Bailments, (sec. 17,) and which has been generally adopted by text writers and jurists, as follows: "Gross negligence is the want of slight care and diligence." That is, gross negligence is distinguished from all other degrees of neligence, by the entire absence of care and diligence.

Many authorities might be cited, as sustaining the proposition, that to authorize a recovery for exemplary damages in this class of cases, the negligence must be so gross and palpable, as to amount, in contemplation of law, to a willful injury. Here the company used a switch which it seems had been tested and approved for general use, and also provided servants to take charge of trains, whose duty it was to place the cars upon the siding and there to secure them by brakes or blocks. In this respect it is obvious, therefore, that the

company had used some care and exercised some diligence in protecting its employes against injury, and is not chargeable with gross negligence.

Upon the evidence as disclosed by the record, the court erred in submitting the question of exemplary damages to the jury. The correct rule for measuring the damages in this class of cases, is the probable amount that the deceased would have contributed to the appellee had he not lost his life by reason of the accident. In determining the amount, the age and probable length of time the mother would live as well as that of the son had he not been killed in the wreck, and the probability of his continuing to make such contributions had he lived, should be taken into consideration.

In respect to the rule for the measure of damages, the charge of the court is such as probably misled the jury. Our conclusion is that the judgment ought to be reversed and the cause remanded.

Report of Commissioners of Appeals examined, their opinion adopted, the judgment reversed and the cause remanded.

Reversed and remanded. Watts, Commissioner, adopted.