GULF, C. & S. F. RY. CO. v. HICKS et ux. (No. 1314.)

(Court of Civil Appeals of Texas. Texarkana. April 30, 1914.)

1. DEATH (§ 103*)—QUESTIONS FOR JURY—RESULTING LOSS OR INJURY.

In an action by the parents of a young man of 23 killed in a wreck due to defendant's negligence, *held*, on the evidence, that the question whether plaintiffs had any reasonable expectation of pecuniary benefit from him was for the jury.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 141; Dec. Dig. § 103.*]

2. DEATH (§ 86*)—RIGHT OF ACTION—LOSS OR INJURY.

In an action under the statute by the surviving wife, parents, etc., for damages from injury resulting in death, there can be no recovery, unless plaintiffs had a reasonable expectation of pecuniary benefit from deceased.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108, 109, 112–114, 117, 119; Dec. Dig. § 86.*]

3. DEATH (§ 99*)—DAMAGES—EXCESSIVE DAMAGES.

In an action by surviving parents about 65 years of age for damages from the death of a son 23 years of age, where it appeared that plaintiffs were engaged in farming and stock raising, and were worth about $30,000, that deceased was skilled in such business, and when at home assisted therein and in household work, that he was considerate of their health, and had on occasions called a physician to see them, and that he had stated that he intended to remain unmarried while his mother lived, in which the jury, under Rev. St. 1911, art. 4704, might allow such damages as they thought proportionate to the resulting injury, a verdict of $5,500 was excessive and would be reversed, unless a remittitur of $4,400 was filed.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

Willson, C. J., dissenting in part.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by W. F. Hicks and wife against the Gulf, Colorado & Santa Fé Railway Company. Judgment for plaintiffs for $5,500, and defendant appeals. Reversed and remanded for new trial, unless a remittitur of $4,400 was filed, in which event judgment reformed.

Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. Evans & Carpenter, of Greenville, for appellees.

WILLSON, C. J. On September 25, 1911, as the result of the wrecking of one of appellant's freight trains near Celeste, appellees' son, Ira Delos Hicks, a young man nearly 23 years old, was killed. At the time the wreck occurred deceased, employed by appellant as a brakeman, was on the top of one of the cars forming the train. Appellees charged, the jury found, and we find, that the wrecking of the train was due to negligence on the part of appellant, in that it was operating same at too great a speed over a track not reasonably safe because of rotten ties. The appeal is from a judgment for $5,500—apportioned $500 to the father, and $5,000 to the mother—recovered by deceased's parents as the damages they suffered because of his death.

[1, 2] At the time of deceased's death appellee Hicks was about 65, and his wife about 63 years old. They had several children, all married and living in homes of their own, except deceased, their youngest child, who lived with them when not at work elsewhere. Besides about 60 head of stock cattle, 15 head of brood mares, and other property, the value of which is not shown in the record, appellees owned the 800 acres of land, worth about $30,000, on which they lived in Hill county, where they engaged in farming and stock raising. Deceased was kind-hearted, sober, trustworthy, industrious, skilled in the business his father was engaged in, and was devoted to his mother. When at home with them he assisted his father in buying, feeding, and shipping cattle, and in doing other work around the place, and his mother in looking after and marketing chickens, eggs, etc., in the work involved in operating a dairy she carried on, and in various other kinds of work she engaged in as a housekeeper. Deceased understood caring for sick people, and was a capable nurse. He was attentive and helpful to his mother, not only in assisting her in her work, but also in accompanying her to church when, as often happened, she otherwise could not have gone. He had declared he did not intend to marry as long as his mother lived, but intended to remain unmarried, so he could see after and take care of her. On one or two occasions he had the witness Dr. Mayner to call professionally to see his father or mother, stating to him that his father and mother "were getting old and needed attention, and his father would not call a doctor very often when he needed one," and that he (deceased) "would settle the bill, and for me (witness) to come to him for it." Deceased and his father had entered into an agreement, the terms of which were stated in testimony of the latter as follows: "The agreement we had was that I was to furnish 25 mares and 50 or 60 head of cattle, and he was to get one-half of the increase for his labor. * * * He was to run the farm, and what we made was to be used that way. If we did not use all that we made on the farm, the balance was to be sold, and it was to be ours, mine and his; if anything was left, not used, we were to dispose of it, and it was to belong to us. We were to divide the profits on the stock business half and half, and, if there was anything left on the farm, we were to divide that. * * * He was going to come home Christmas and take charge of everything and carry out the agreement we made, take charge of the stock, cattle, horses, and farm."

In the statement just made we think we have recited substantially all the facts relied on to show pecuniary loss to appellees as a result of the death of deceased. Appellant insists that it cannot be said it appeared from those facts that appellees had reasonable expectation of pecuniary benefit from deceased had he not been killed, and that therefore the judgment in their favor is not supported by evidence, and cite, as supporting their contention, Winnt v. I. & G. N. R. R. Co., 74 Tex. 32, 11 S. W. 907, 5 L. R. A. 172; D. & W. Ry. Co. v. Spicker, 61 Tex. 427; Texas Portland Cement Co. v. Lee, 36 Tex. Civ. App. 482, 82 S. W. 306; Railway Co. v. Johnston, 78 Tex. 536, 15 S. W. 104; and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Standard Light & Power Co. v. Muncey, 33 Tex. Civ. App. 416, 76 S. W. 931.

The two cases first cited are so unlike this one in their facts as to render it unnecessary to further refer to them.

The Johnston Case was not a suit by parents for damages for the death of their child, but was a suit by the widow, a minor daughter, a married daughter, and a son who lacked only a few months of being 21 years of age, of the deceased. The judgment was in favor of the widow and minor daughter for $5,000 each, and in favor of the son and married daughter for $2,500 each. It was shown that the deceased earned $125 per month as a locomotive engineer. There was no testimony showing that he had contributed anything to his son or to his married daughter. In reversing the judgment, so far as it was in favor of the son and married daughter, the Supreme Court said: "The damages recoverable in an action of this character are for the pecuniary loss of the party benefited by the recovery. Before a recovery can be had, the loss must be proved like any other fact. It is difficult to imagine a case in which it can be proved directly. It must be proved by circumstances, such as the relation and ages of the deceased and the surviving relative, the capacity of the former for earning money, and his disposition to contribute pecuniarily to the aid of the latter. In this case the circumstances repel the idea that the son and married daughter of the deceased had any just grounds to expect pecuniary assistance from the father. The law does not and cannot compel the party causing the death to give a gratuity in these cases. The recovery is to compensate a loss and not to confer a bounty."

The Lee Case was a suit by the widow and parents of the deceased, 25 years old at the time he was killed, in which each of the parents recovered judgment for $500 on facts found by the Court of Civil Appeals to be as follows: "That up to the time of the marriage of the deceased, A. G. Lee, he contributed largely to the support of his father and mother, J. G. and Mary Lee, but after such marriage he contributed nothing to their support. That at the time of the trial of the cause in the court below J. G. Lee was 67 years old, and Mary Lee was about 60 years old. J. G. Lee's health was good; but Mary Lee's health was bad and had been for many years. J. G. Lee was a carpenter by trade; but the amount of property owned by him and his wife is not shown. Nor does it appear from the evidence what income, if any, J. G. and Mary Lee had, or that they needed pecuniary aid from their son." On the ground that the facts stated were not sufficient to support it, the judgment in favor of the parents was reversed by the Court of Civil Appeals. That court said: "It does not appear from the evidence that they [the parents] had any reasonable expectation of receiving any pecuniary benefit from him [deceased] in the future had he lived. It was essential for the parents of the deceased to show that they had suffered some pecuniary loss by reason of his death in order to authorize a verdict for any amount in their favor. This they failed to do." The value of the case as a precedent is weakened by the fact that the Supreme Court, in overruling, on other grounds, the application of the parents for a writ of error, were careful to say they did not wish their action to be construed as meaning that they thought the judgment in favor of the parents was not supported by the evidence. Texas Portland Cement Co. v. Lee, 98 Tex. 236, 82 S. W. 1025.

The Muncey Case was a suit by the wife for the benefit of herself and the father and mother of the deceased. The judgment in favor of the father and mother for $1,000 each was attacked on the ground that the proof showed "deceased did not contribute anything toward their support, and there was no proof of their receiving any pecuniary benefit from a continuation of his life." In disposing of the contention, the Court of Civil Appeals said: "We are of the opinion that this objection is well grounded. The evidence shows that, after deceased married, he contributed nothing to the support of his parents, and that there was no necessity therefor, and there is no evidence to show that they had any reasonable expectation of receiving any pecuniary benefit from him thereafter had he lived. The relationship itself does not give a right of recovery. It must be shown that they have sustained some pecuniary loss by the injury upon which the jury could legally base a verdict."

While this case is like the Lee and Muncey Cases in some of its facts, it is unlike them in that here deceased not only performed service of pecuniary value to his parents after he became 21 years of age, when he was under no legal obligation to do so, but had declared it to be his intention to not marry during his mother's lifetime, so that he might more effectually look after and care for her. But those cases, and the Johnston Case also, make it plain that a recovery should be denied in such cases in the absence of testimony showing that the plaintiff has reasonable expectation of pecuniary benefit from the deceased had he not been killed. In view of appellees' financial condition and the contract he and his father had entered into, as shown by the testimony, the writer is strongly inclined to think it so improbable that a necessity for deceased to aid his parents pecuniarily ever would have arisen, or that such aid ever would have been rendered to them by him, that it should be said, as a matter of law, that they had no reasonable expectation of such benefit from him. The other members of the court, however, are of opinion the testimony made a question as to whether appellees had such

expectation or not, which should have been, as it was, submitted to the jury. The conclusion, therefore, is that appellant's contention that the testimony was not sufficient to show pecuniary loss to appellees should be overruled.

[3] But, conscious as we are of the fact that "the damages in such cases are essentially indefinite" (Railway Co. v. Kindred, 57 Tex. 503), and of the fact that the statute declares that in such cases "the jury may give such damages as they may think proportioned to the injury resulting from such death" (article 4704, R. S. 1911), and loath as we are to substitute our own judgment for that of the jury as to the proper amount to award as damages, we nevertheless are agreed that under the circumstances shown by the testimony the verdict and judgment are so plainly and radically excessive they should not be permitted to stand. It is clear, we think, when the financial condition of appellees is kept in mind, that it was extremely improbable that appellees ever would have needed pecuniary assistance, and therefore that the assistance of that nature which deceased reasonably could have been expected to render to them would have been trivial, and that a much smaller sum than $5,500 would have fully compensated appellees for the loss of that nature suffered by them. We are of opinion that the judgment should not have been for a sum in excess of $1,100, and that it should be reversed, unless a remittitur of $4,400 of the amount recovered is filed.

The assignments presenting other questions for review are overruled.

The judgment will be reversed, and the cause remanded for a new trial, unless, within 20 days from this date, a remittitur of $4,400 of the sum recovered is filed, in which event it will be so reformed as to adjudge a recovery in favor of appellees, in the proportions determined by the jury, of the sum of $1,100.