## BUTTS v. WEAVER.

### No. 3723.

Court of Civil Appeals of Texas. Beaumont.
Oct. 23, 1940.

Rehearing Denied Dec. 4, 1940.

Collins, Williams, Hatchell & Garrison, of Lufkin, for appellant.

H. R. Rolston, of Lufkin, for appellee.

WALKER, Chief Justice.

Appellee, Earl Weaver, was plaintiff below, appellant the defendant. For cause of action, appellee alleged that on the 2nd day of April, 1938, appellant was drilling an oil well in Angelina county, and that he was one of appellant's employees on this job "in the capacity of a common laborer"; that on or about the 2nd day of April, 1938, while working in the course of his employment, he was instructed by appellant's foreman "to assist, aid and help another employee of defendant to partially pick up and lift a twelve inch pipe which weighed about 500 pounds, and guide same to a scaffold and place said pipe upon the said scaffold"; "but said pipe in the usual and customary course of said work was supposed to have been lifted from the ground by means of steam power which was supplied by a small steam engine, and that in connection therewith a chain was fastened around the middle of said pipe and then by means of certain mechanical devices the said engine was supposed to lift and pull said pipe from the ground and place same upon the scaffold, but due to the imperfect and defective condition of said steam engine same did not generate enough steam power to completely lift said pipe"; that appellant directed appellee and one other employee "to help lift the said pipe and guide and place same upon the scaffold, all of which was the usual and customary way and manner employed by defendant to do the work above described"; that, complying with the orders of his foreman, appellee immediately took hold of one end of the pipe and another employee took hold of the other end and they, "with the assistance of said steam engine as stated aforesaid, lifted said pipe and attempted to guide and place same upon the scaffold, at which time plaintiff was forced and compelled to drop his end of said pipe by reason of the fact that he felt a tearing and experienced great pain in the lower right side of his abdomen, that the effort and strain of lifting said pipe had and did injure plaintiff in the lower right side of his abdomen, causing serious, painful and permanent injuries, and did thereby cause and inflict upon plaintiff a hernia." Appellee specially pleaded negligence in the use of the engine in the following respects:

"(c) Defendant was guilty of negligence in furnishing for the purpose of lifting said pipe, a defective and imperfect steam engine, and because of such negligence plaintiff was injured thereby.

"(d) Defendant was negligent in furnishing the kind of steam engine in question for the purpose of lifting said pipe, and that the type of engine being used at the time of plaintiff's injury, could only generate 80 pounds of steam pressure, which was insufficient and wholly failed to lift said pipe, and because of such negligence plaintiff was injured thereby."

Appellant answered by general and special demurrers, general denial, etc.

The jury gave an affirmative answer to each of the following questions:

"Special Issue No. 1. Do you find from a preponderance of the evidence that Ed Butts, was the employer of Earl Weaver on the occasion in question."

"Special Issue No. 2. Do you find from a preponderance of the evidence that Earl Weaver sustained personal injuries while working at the drilling rig on the occasion in question?"

"Special Issue No. 3. Do you find from a preponderance of the evidence that the defendant, Ed Butts, failed to furnish an engine for the purpose of lifting the said pipe, that was sufficient to safely lift the pipe, being lifted on the occasion in question?"

"Special Issue No. 4. Do you find from a preponderance of the evidence that such failure, if any, was negligence?"

"Special Issue No. 5. Do you find from a preponderance of the evidence that such negligence, if any, was the proximate cause of the accident and resulting injuries to the plaintiff, if any?"

Answering the following special issue, the jury assessed appellee's damages at $1,500:

"Special Issue No. 6. What sum of money, if any, paid now in cash, do you find from a preponderance of the evidence, will represent a fair and reasonable present compensation to the plaintiff, Earl Weaver,

for his damages, if any, resulting directly and proximately from the personal injuries, if any, suffered by him on the occasion in question?"

From the judgment entered in appellee's favor for the damages assessed by the jury, appellant has duly prosecuted his appeal to this court.

■ Appellant advances no proposition against the amount of the damages assessed by the jury, nor the finding that appellee suffered personal injuries at the time and on the occasion in question. Since the evidence, as a matter of law, established the relation of employer and employee between appellant and appellee, the assignment against the court's definition of "employer" suggests only harmless error.

■ Appellant advances the following points against special issue No. 3:

(1) The court erred in submitting to the jury special issue No. 3 because appellee had no allegation in his petition that appellant "was under any duty to furnish an engine, or that the engine used was defective in any particular, or that any defect, insufficiency of or failure in function of such engine directly injured or put upon" the appellee any strain or effort causing him to suffer a hernia. This contention is overruled. By the act of negligence, No. (d) copied above, appellee alleged that the engine "was insufficient and wholly failed to lift said pipe," and by act (c) that the engine was "defective and imperfect." It was further alleged that the engine was furnished for the purpose of lifting the pipe, and that appellee was directed to assist in lifting the pipe, and due to "the imperfect and defective condition" of the engine, it "did not generate enough steam power to completely lift said pipe." Appellee alleged that because of the failure of the engine to function properly he was forced to assist in lifting the pipe and that in lifting the pipe he suffered a hernia. In our judgment, appellee alleged that the engine was defective in not furnishing a sufficient amount of steam and that this defect caused his injury.

Appellee alleged "that said pipe in the usual and customary course of said work was supposed to have been lifted from the ground by means of steam power which was supplied by a small steam engine." This allegation, construed in connection with the allegations copied above, constituted a plea by appellee that appellant was under the duty to furnish an engine to assist in lifting the pipe.

■ (2) The second point against special issue No. 3 is that appellee did not allege "any facts indicating any want of ordinary care on the part of the defendant in respect to any defect in, insufficiency of or failure to function by the engine in question." This point is overruled. Appellee alleged the relation of employer and employee, performance by him of a duty in the course of his employment, the use of a defective engine furnished by appellant, and an injury, proximately caused by the defect in the engine. The general intendments of these allegations invoked the following legal proposition announced by our Supreme Court in International & G. N. R. Co. v. Kindred, 57 Tex. 491, 502: "The master is charged with a duty to those serving him of which he cannot divest himself by any delegation to others. He is charged with such a duty as regards the safety of his premises, the suitableness of the tools, implements or materials he procures or employs, and the servants he engages or makes use of. Whoever is permitted to exercise the master's authority in respect to those matters is charged with the master's duty, and the latter is responsible for a want of proper caution on the part of the agent, as for his own personal negligence." Having pleaded the facts invoking the duty of "ordinary care" in respect to the engine, the breach of that duty which was pleaded was an allegation "indicating * * * want of ordinary care."

■ (3) The third point against special issue No. 3 is that appellee did not allege that the defect in the engine "proximately caused" his injury. This essential allegation flows necessarily from the allegations of the petition copied above.

■ (4) Special issue No. 3 "assumed that the defendant was bound to furnish an engine sufficient to safely lift the pipe in question." Special issue No. 3 was not defective in this respect. The following facts were established as a matter of law: (a) The relation of employer and employee between appellant and appellee; (b) at the time of his injury, appellee was in the course of his employment; (c) the engine furnished by appellant "for the purpose of lifting the pipe" was defective. These undisputed facts invoked against appellant the duty to furnish a "safe engine" with which to lift the pipe.

254

(5) The fifth assignment against special issue No. 3 is that it was not raised by the evidence, and that the jury's affirmative answer thereto is without support in the evidence. This assignment is overruled. The testimony on this point (Q. & A. reduced to narrative) is as follows:

Jeff Ellis, the foreman on the job, testified: "Mr. Butts gave us orders to shut down; he told us to shut down. He said, 'Let's shut this thing down; we are going to get somebody killed here in the dark and it'll cost me a million'; I said, 'There sure is a big chance of getting somebody killed, all right.' I have done quite a bit of field work. We had very poor equipment on this job; a little hoisting engine that was not intended to drill a well with. That is not the kind of engine that is generally used to lift that pipe and stuff; that was the first well I ever saw that used it like that; in other words, it was not the kind of engine that is commonly employed to do that type of work. How much steam power was raised on that engine? We raised 100 pounds and it blew out and we were afraid to get more than eighty. During the time we were spudding in the well and drilling it—we were there two nights—one night and one day and part of another night, and Mr. Butts was present to my notion about all the time. This steam engine did not generate enough power for that outfit—not necessarily. It blew out one time at 100 pounds of steam. We had had trouble with the engine before; I think they had a boiler-maker there about twice; somebody down there at the well I think about twice."

Appellee Weaver testified: "I went ahead and got the job and went to work, and went all during the day we were working; and the next day we was drilling and lifting this pipe out of the hole; and Mr. Ellis said the machinery wasn't sufficient to lift it. I can describe the kind of engine that was used to lift this pipe down there; I don't know the name of the engine, it is what I call a pressing-shop boiler, a little outfit, the engine looks like a tieing outfit; it is down there now if you want to see it. The pipe was supposed to be lifted with steam power, I imagine; I never worked on anything like that before; it tried to lift it with all the steam they had but never lifted it, and had to be done with manual labor, and the pipe was ten or twelve inch pipe, twenty-one feet long and pretty heavy. I was lifting one end of the pipe when I received my injury; it came back on me and I could not hold it; that is all. The pipe was lying flat on the ground. Mr. Ellis told me and Elzy Thompson to lift the pipe. He told us to lift it and put it on the scaffold, with this other help—the steam help. I thought I said heretofore that the steam was helping. When Mr. Ellis told me and Elzy Thompson to pick up the pipe, it had a chain on it attached to the machinery. He told us to help the steam lift the machinery, to lift that pipe up there; up there on the scaffold. It was just a platform outfit made there to slip the pipe on so we could get it up off the floor. The pipe was not on the scaffold when we started to lift it. It was lying on the ground and we were just helping lift it on the scaffold; trying to get it so far up that the steam would lift it up. Since I thought of it, I remember one order that Mr. Butts, the defendant, gave us. Whenever this boiler blew out, Mr. Butts came up there and told us to go ahead and lay the boiler down, while he let Mr. Ellis go to Diboll to get a welder to weld the boiler back."

Weldon Howard testified: "Well; they was trying to raise this pipe with the machinery we had, and seemed to have trouble—not enough steam in the boiler to raise it, and they got it half way up and this Earl—this other boy had went in the middle of it to keep it guided on the platform and keep it straight, and this boiler failed some way and let the pipe fall, and Earl grabbed it to keep it off of him, and he got kind of under it."

The evidence raised the issues submitted by questions 4 and 5, and also supports the jury's affirmative answers to these questions.

Appellant has submitted his brief without citing any authorities; on that ground appellee has moved to strike his assignments of error. The motion is overruled; the failure to cite authorities is not jurisdictional.

The judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.

### On Rehearing.

In his motion for rehearing, appellant briefs most interestingly his 11th proposition. We do not review this proposition and appellant's authorities, because it is our conclusion that, while the proposition was formally advanced by appellant in his brief, it was waived by him in that it was not presented in such way as to require this court to review the exceptions present-

ed. The entire statement made by appellant under this proposition in its original brief was as follows:

"Statements and Remarks

"This proposition is germane to Appellant's tenth assignment, page 45 hereon, and the fifteenth assignment of the motion for new trial.

"Defendant made his objections in writing to said instruction in the trial court in due time, for the reasons set out in the foregoing proposition."

The 11th proposition was waived by the original brief, and as briefed in the motion for rehearing, it constitutes an additional proposition which is in violation of the briefing rules. We are not basing this conclusion on the fact that appellant cited no authorities in his original brief; while not required to cite authorities, he was required to make a statement, supplemented by an argument, directing our attention to the errors assigned. However, if we are in error in this conclusion, the 11th proposition should be overruled as not constituting error.

After a careful review of all of appellant's assignments on rehearing, they are overruled.